## ANDREW N. HOPKINS v. HORACE L. UPSHUR.

Austin, March 17th, 1851. We, the undersigned, agree to donate the cash or property set opposite our names, for the purpose of erecting a Protestant Episcopal Church in the city of Austin, signed by the defendant, among others, with a certain amount set opposite his name, and delivered to one of the Vestry of the Church; and upon the faith of which the Vestry incurred pecuniary liabilities and expense; held to be a valid contract; and held further that the contractor who undertook to build the church, and to whom said subscription was assigned by the vestry in payment, could maintain an action therefor in his own name.

There is nothing, in this case, in the objection that at Common Law there is no authority in the Courts to enforce a subscription for charitable purposes.

Appeal from Travis. Tried below before the Hon. Thomas H. DuVal.

The facts are stated in the Opinion.

*R. T. Brownrigg,* for appellant. There was an express promise and a consideration. (Smith on Con. 88; 1 Taunt. R. 423; 8 Bing. R. 8; Bunn v. Guy, 4 East, R. 194; 2 Bouv. L. Dic. title, SUBSCRIPTION; 20 Verm. R. 509; 9 Grat. R. 183; 3 Barr, R. 416.)

As to the want of a nominal payee, the authorities heretofore cited show this instrument to be "a simple contract in writing

or promise to pay for value," in equity equivalent to a promissory note or bill of exchange, transferable for value, with or without indorsement. (Story, Eq. Jur. Sec. 1040, 1040 *a*.) The same is the doctrine of the civil law. See also Nimmo v. Davis, 7 Tex. R. 26; Hunt v. Turner, 9 Id. 385; 15 Id. 25; 16 Id. 549. A *bona fide* owner or holder of a bill of exchange or promissory note, made payable in blank, may fill the blank with his own name, &c. (2 Tex. R. 232; 4 Id. 109; and see Crutchley v. Clarence, 2 M. & S. R. 90; Bank of Kentucky v. Gary, B. Mon. R. 626; Chitty on Bills, 156; Story on Prom. N. Sec. 37–8–9.) These authorities establish the proposition that the payee of a written promise may be proved by evidence dehors the writing; there being no distinction in equity, in this respect, between promissory notes and bills of exchange and other written promises. The evidence here shows that the Vestry was the payee. See Barnes v. Perine, 15 Barr, R.; 2 Cush. R. 271; 4 Scam. R. 202; 4 Phill. on Ev. p. 598, 599, and language of Kennedy, J., in the case of the Commissioners v. McCalmont, there cited; 3 Scam. R. 198.

*West*, for appellee. We contend that no action would lie on such an instrument, because

1st. It is a mere donation, a gift, and was not accompanied by delivery, as a gift should be. (1 Tex. R. 161; 6 Id. 45.) It is void as a gift further for want of a *donee*. (5 Humph. 170; 1 Swan's Tenn. R.)

2d. As a *contract*, and not as a gift, it is utterly void; it wants two of the most essential ingredients of a contract—1st. There are no parties to it; and secondly, there is no consideration. There cannot be found in any Law Book, a case in which the Courts have enforced a contract, without parties and without consideration, whether the subscriptions were for charitable purposes or not. The attention of the Court is respectfully called to the wording of the contract in every case, without exception, cited by appellant; and in every instance it will be found, that in the body of the instrument, there is some corporation, trustee, or committee to whom the subscription is made payable. If it be contended that the instrument by its tenor was payable to the Protestant Episcopal Church, the answer is short; the church is unincorporated, and has no power to receive donations or to contract. The Statute of Jan. 30th, 1845 (Hart. Dig. Art. 3238 *et seq.*, p. 973) expressly provides the

mode by which persons desiring to build a church, can acquire an existence and being that will be recognized by the Courts.

3d. Even upon the supposition that the contract is legal, yet we contend that unless the appellant can show that with the knowledge and consent of appellee, he has been induced to contract engagements and liabilities on the faith of his subscription, he cannot recover. (Story on Contracts, Sec. 453; 1 Parsons on Contracts, p. 378, and authorities cited in the note.)

Story lays down the law to be that where work is thus done even on the faith of the subscription, that it would only be to his co-signers that the subscriber could be held liable, on the ground of the mutuality of the contract and consideration. (1 Story on Con. p. 556; Curry v. Rogers, 1 Foster, N. Hamp. R. 247.)

But Judge Parsons goes further, and says that only in cases where advances have been made or expenses incurred without notice of the refusal of the party to pay, can an action be maintained; and says that to allow the action on the ground of the mutuality of the consideration, is to argue "in a vicious circle." (1 Parsons, Con. p. 378.) The following authorities are cited: 11 Mass. 114; 2 Pick. 579; 9 Barb. 202; 2 Mass. 254; 6 Metcalfe, 310; and cases cited in the Notes of Parsons and Story above referred to.

ROBERTS, J. Appellant recovered a judgment against appellee for fifty dollars, in a suit before a Justice of the Peace. It was carried into the District Court by certiorari, and the cause having been submitted to the Judge, was decided against appellant. From this decision the appeal was taken to this Court, and the question now is, Did the Court decide correctly in determining that the facts adduced on the trial did not show a good cause of action in plaintiff below?

The statement of facts shows that Upshur signed a subscription, which reads as follows:—

"AUSTIN, March 17th, 1851.

"We, the undersigned, agree to donate the cash or property set opposite our names, for the purpose of erecting a Protestant Episcopal Church in the city of Austin. (Among others)

H. L. Upshur . . cash . . . $50"

It is contended by Upshur, that Hopkins cannot make this

instrument the foundation of a cause of action against him; because—

1st. It is wanting in proper parties, to wit: a payee.

2d. It is wanting in mutuality, if there were payees to it.

3d. It is wanting in a valid consideration.

Standing by itself, isolated from the attendant and subsequent transactions in relation to it, it would clearly be liable to these objections. It does not bear upon its face all the qualities of a good cause of action, as does a promissory note in ordinary form. The facts, as shown in the record, were, that this subscription was made to Geo. J. Durham, as one of the Vestry of the Episcopal Church of the City of Austin; that the Vestry consists of persons who have charge of, and are trustees for, the temporal affairs of the church; that after this subscription and others were made, and upon the faith and credit of them, the "Vestry" contracted with Hopkins and one Sidegast to build the church, who gave bond for the performance of the contract; that they, the contractors, in consideration of this and other like subscriptions, undertook the contract, and did build the church; that after the contract was made, and before suit was brought, the Vestry transferred the subscriptions over to the contractors, after which Sidegast transferred all his interest in the contract to Hopkins, who completed the work according to contract; and which was satisfactorily received by the Vestry.

Do these circumstances, in connection with the instrument, defeat the objections above referred to, and justify the suit? We think so.

First, as to the want of payees.

The men who constitute the "Vestry" were originally the payees. They were not named in the instrument, but the witness Durham says that "it was made to him, as one of the Vestry of the Episcopal Church." They were the persons intended to receive the donations for the purposes set forth, and it was delivered to one of them for all. A consideration is as essential to the validity of a contract as proper parties. It would not be contended that a consideration could not be averred and proved, although it was neglected to be stated in the face of the contract. Why not the same of a payee, if one really existed, though omitted by inadvertence or other cause? It has been settled that a bona fide holder of a bill of exchange, in which a blank was left for the name of the payee, may insert his own name, and bring suit on it. So also may a suit be brought on a

note or bill payable "to bearer," without the name of any person appearing in it as payee. (Close v. Fields, 2 Tex. R. 232.) Such bills, though defective in form, constituted a part of a real transaction, which was allowed to be developed by adducing that which does not appear upon their face.

In the case of Dickson et als. v. Montgomery et als., (1 Swans, R. 348,) the testator, in making an endowment, misnamed the college, and also the party intended to take the bequest; and by proof it was shown what institution of learning and what party were meant to be designated. It was there said "that where the name or description of a legatee is erroneous, and there is no reasonable doubt as to the person who was intended to be named or described, the mistake will not disappoint the bequest. The true intention of the testator may be ascertained and the error corrected." If, then, an error in the instrument may be corrected, by proof of the real facts, so, with equal propriety, it may be shown who the parties are that were intended in this transaction.

The leading case relied on, in opposition to this view, is the case of Philips Limerick Academy v. Davis. (11 Mass. R. 113.) In that, a subscription was signed by about sixty persons, to raise means to build an academy; and afterwards, by an act of incorporation, trustees for the academy were created; who brought the suit against Davis, a subscriber. The suit failed, because there was no payee in existence at the time of the subscription, who could take or sue, and there was no privity of contract between the subscriber and trustees.

The points of difference between that case and this are, first, the subscription, in that, was made in favor of no particular persons, nor was it delivered to any person; in this, it was delivered, and there were persons intended to receive the donation. That case was an action of assumpsit, founded on the subscription, in a Common Law State, where the plaintiff must show a legal title in himself to maintain his suit; which he could not do. This case is brought in a Court exercising full equity powers to act upon the subscription and proof of surrounding circumstances, showing fully the real transaction; and where, too, the doctrine is fully recognized, that any *chose in action* may be assigned, and suit brought thereon by an equitable holder. (Devine v. Martin, 15 Tex. R. 25.) The subscription, then, having been made and delivered to the Vestry, by them, for a valuable consideration, assigned to Hopkins and Sidegast, and by Sidegast

to Hopkins, the latter has a right to sue, so far as it depends upon a mere question of parties to the contract.

The other two objections—of want of mutuality, and of consideration—may be presented together.

At the time Upshur made and delivered the subscription to Durham, it is true that the Vestry did not and had not bound themselves to build the church. And it is also true that there was no consideration then executed. It may well be admitted that there was at that time no cause of action against Upshur. When and by what acts, then, did it accrue? The answer is, when the Vestry assumed liabilities and incurred expenses in building the church, upon the faith of the subscription.

In Amherst Academy v. Coles, (6 Pick. 433,) Parker, Chief Justice, ruled, that if, by means of a solemn promise to pay, the body, to whom the promisor has pledged his word, should encounter expense, or assume legal liabilities, this was a sufficient consideration to support such a promise.

It is not necessary that a consideration should exist at the time of subscription, which is in the nature of a proposition, and the performance of the work is the acceptance of the proposition, and also the consideration, which supports it, as a valid binding proposal. (Barnes et als. v. Perine, 2 Barb. R. 202.)

" The general principle is, that voluntary agreements and promises, however reasonable the expectation from them of gifts or disbursements, even to public uses, when made without consideration, are not to be enforced as contracts ; but, where it is a proposal upon a consideration afterwards performed, this may import a sufficient consideration." (Philips Limerick Academy v. Davis, 11 Mass. R. 117.)

Nor is it necessary that there should be a party, payee, at the time of the subscription, with a corporate capacity or otherwise, capable of receiving, suing, or binding himself to a performance, so as to secure mutuality then in the contract.

A case in point where the payee did not bind himself, but services were performed afterwards, is First Religious Society of Whitestown v. Stone. (7 Johns. R. 113.)

In the case of Thompson v. Paige (1 Met. 565), there was no payee in existence at the time of the subscription. That was a subscription by an association of persons to aid in the building of a meeting-house. Payment was to be made to a Treasurer, to be selected by a majority of the associates at a meeting to be held for that purpose. A person was afterwards chosen Trea-

surer, who brought and maintained a suit for a sum subscribed on the list. (See also George v. Harris, 4 New Hamp. R. 533; and Ives et als. v. Stirling, 6 Met. 310.)

Justice Story lays down the rule, that, "when a charity is definite in its objects, and lawful in its creation, and it is to be executed and regulated by trustees, whether they are private individuals or corporations, then the administration properly belongs to such trustees." (Story, Eq. Jur. § 1191.)

It is further contended by appellee that he revoked this voluntary agreement by refusing to pay it.

Under the principles heretofore announced, it may be that he could have done so at any time before any legal liabilities or expense had been incurred on the faith of his promise; but certainly not afterwards. (Amherst Academy v. Cowles, 6 Pick. 433; Barnes et als. v. Perine, 9 Barb. 202.) The facts of this case, however, do not sustain this position; for, after the church had been contracted for, and during the time the foundation was being laid, he was called on by one of the building contractors for the amount subscribed by him, and he refused to pay it. The ground of his refusal was not in the nature of a retraction, but that he had never signed the subscription. And he then agreed, that if his name could be shown on it, in his own handwriting, that he would pay it. The statement of facts shows that it was there, and in his own handwriting.

This was not a retraction, and, if it had been, it was not made in time to avail him.

The result of the preceding views is, that the subscription was a voluntary agreement to donate to the Vestry as trustees of the temporal affairs of the church, for the erection of a church building, matured into an enforcible contract, by Upshur having permitted the trustees to incur legal liabilities, and encounter expense upon the faith of it.

Another objection to this suit is taken, which strikes at its foundation; that is, that a Court of Equity has no power in this State to uphold and enforce such a trust for a charity. It is contended that this jurisdiction was given to the Court in England by statute; and there being no such statute here, the power is wanting. (See case cited by appellee, Green et als. v. Allen et als., 5 Humph. R. 170.) We think the contrary is settled by the weight of authority, and that a Court of Equity has such power by virtue of its general jurisdiction, independent of a statute. This is fully shown in a case decided by the Supreme

Court of the United States of Vidal et al. v. The Citizens of Philadelphia et al. (2 How. R. 127.) See also Story, Eq. Jur., Sec. 1191, and Dickson et als. v. Montgomery et als. (1 Swan's Tenn. R. 348.)

We are of opinion, therefore, that the facts of this case entitle Hopkins, the plaintiff below, to sue for and recover the amount subscribed by Upshur.

The judgment of the District Court is reversed, and judgment rendered for plaintiff below, as it should have been done by the District Court.

Reversed and reformed.