JOHN McCRIMMIN AND OTHERS v. JOHN COOPER.

The payment of a voluntary subscription, on the faith of which expense has been incurred or legal liabilities assumed, may be enforced.

To recover on a subscription paper, it is necessary to show a substantial compliance with the terms offered by the subscribers; that the labor, &c., was performed on the faith of the subscription and within a reasonable time, as well as in the manner contemplated.

In a suit on a subscription list for building a bridge, no time being specified, *held*, that performance after twelve months delay was *not* within reasonable time, and that without proof of assent to the delay the subscribers would not be bound.

APPEAL from Cherokee. Tried below before the Hon. R. A. Reeves.

This suit was originally brought in a justice's court, by the appellee John Cooper, against John McCrimmin and others, appellants, on a subscription paper for building a bridge, to which appellants were subscribers. There were two jury trials before the justice, both resulting in favor of the defendants. The plaintiff then removed the cause by *certiorari* to the District Court and obtained judgment, from which the defendants appealed.

On the trial plaintiff proved by Benjamin Johnston, that in the summer of 1857 he had a subscription paper drawn up, to which were signed the names of the plaintiff and defendants and others, each promising to "pay the several amounts annexed to their names, to any person or contractor who might thereafter build a free bridge across Mud Creek, at the place known as the Burnt Bridge, on the road leading to Henderson, Rusk county." That witness held the subscription a while; that the subscription list was to be delivered to any person who might build said bridge mentioned in the subscription; that no time was specified in the subscription in which the bridge was to be built; that he understood it to be the understanding to have the bridge built as soon as they could get some person to build the same; that a time was appointed to let out the contract for building the bridge, and witness was at the place at the time appointed, when and where the

8*

said parties were to meet and let out the contract. That no persons were present except himself and Medlock, one of the defendants, and two others. That witness had the subscription with him, and remarked at the time that he would have nothing more to do with it. That he took the subscription home with him, and kept it until the plaintiff Cooper built the bridge. That in the summer of 1858, the plaintiff Cooper asked witness if he still had said subscription, and told witness that he had a notion of, or would build the bridge, if witness would give plaintiff the subscription. That witness offered plaintiff the subscription at the time, but plaintiff told him he did not want it until he had built the bridge. That after plaintiff had built the bridge in the fall of 1858, witness delivered the subscription to plaintiff. That the bridge was built across Mud Creek at the place known as the Burnt Bridge.

Turentine, for defendant, testified that when plaintiff commenced getting timbers for the bridge, witness passed along, and Cooper, the plaintiff, told witness that he was going to build the bridge, and witness asked plaintiff how he was expecting to be paid ? Plaintiff replied, that he would ask the neighbors for help, who, he supposed would pay something; and if they did not, he would apply to the County Court for pay, and that if the court refused to pay him, he was independent of the neighbors and the court; that he owned the land on both sides of the creek, and that he would build the bridge and erect a toll gate, and being thus the owner of both land and bridge, he would charge people for passing, and thus repay himself for building the bridge.

There was much conflicting testimony on several points not noticed in the opinion of the court. There was additional testimony, but, so far as necessary, it appears in the opinion of the court.

*M. Priest* and *Williams & Williams*, for appellants.

MOORE, J.—We will not attempt to review the various questions that have been raised by the parties during the progress of this case. To discuss them would only be an useless consumption

of time. An examination of the record fully satisfies us that the verdict of the jury was clearly contrary to the evidence, and that it should have been set aside and a new trial granted. It is now a well settled principle in the courts of this State, that payment of a voluntary subscription, on the faith of which expense has been incurred, or legal liabilities assumed, may be enforced. (Hopkins v. Upshur, 20 Tex., 89 ; Doyle v. Glasscock, 24 Tex., 200.) But a subscription paper does not usually bear upon its face all the qualities of a good cause of action. We have generally to look to the attendant and subsequent transactions in relation to it, to obviate the objections that might otherwise be presented against it as the foundation of a cause of action. The appellee in this case, who was the plaintiff below, has not only failed to show, in connection with the subscription on which he sues, such attendant and subsequent transactions as entitle him to maintain his action ; but, on the contrary, the facts as disclosed clearly negative his right to do so.

The testimony shows that the subscription paper to which the appellants were parties, was intended to secure the building of the bridge across Mud Creek, in the place of one that had been burnt. That it was generally understood in the neighborhood, and among the parties to the subscription, that when the requisite amount should be subscribed, a committee was to be appointed, the contract let to the lowest bidder, and that the bridge was to be completed during the fall of 1857. The appellee seems to have taken an interest in getting up the subscription, and upon his representations that it was with the intention and purpose just indicated, he procured subscribers to it. The testimony also shows that there was a meeting of some of the subscribers in accordance with this general understanding among the parties interested in the matter. But so few of them attended the meeting that the enterprise was considered by those who were present as abandoned; and the party who then held the subscription paper, and from whom the appellee got it some twelve months afterwards, declared that he would have nothing further to do with the business. Under these circumstances, if the subscription can be regarded as an offer of the amount subscribed to any one who should build a

bridge at the point indicated in it, and if it were conceded that Cooper had built such a bridge as was contemplated by the subscribers, it cannot be held that they were bound to pay him the amounts of their subscriptions. To have bound them, their offer must have been accepted within a reasonable time after it was made, and within time to effectuate the intention of the parties in joining in the subscription. Doing so twelve months after the subscriptions were made, without proof of the ratification or assent of the subscribers, can not be regarded as a reasonable time. It will not be presumed from the circumstances presented in this case, that the subscribers intended to leave the proposition made, open for acceptance for so great a length of time as had elapsed previous to Cooper's commencing to build the bridge. The testimony also tends strongly to induce the impression that he did not build the bridge upon the faith of the subscription. He appears, while building it, not to have regarded the subscribers as under any legal obligations to pay him. He seemed then to rely solely upon their sense of liberality for such compensation as he hoped to receive from them. But be this as it may, we must hold that the offer made by the subscribers could not be regarded as continuing at the date of the arrangement between Johnston, who held the subscription paper, and Cooper; and the appellants were not parties to, or bound by any agreement or contract entered into by them. (1 Pars. Cont., 403, *et seq.*)

The judgment is reversed, and the cause remanded.

Reversed and remanded.