## JOHN COOPER v. JOHN McCRIMMIN.

1. A subscription paper, stipulating that the sums annexed to the subscribers' names would be paid to any person who would build a free bridge at a designated place, constitutes a valid contract between the subscribers and any one who afterwards built a bridge in accordance with the tenor of the instrument.   (Hopkins v. Upshur, 20 Texas, 89, cited by the court.)

2. Such an instrument is like a note payable to bearer, so far as relates to the payee; and when the bridge was completed the consideration was unimpeachable.

3. In a suit by the bridge-builder against the subscribers, it was not competent for the latter to vary or contradict the subscription paper by parol proof that the building of the bridge was to be let out to the lowest bidder—there being no such provisions in the paper itself.

4. A subscription paper of the import above indicated may well be regarded as a standing offer, which any one might accept and enforce; and as it limited no time for the completion of the bridge, the undertaker was entitled to a reasonable time for that purpose. In the present case it is held that the undertaker was guilty of no unreasonable delay, though he did not build the bridge until something over a year after the subscriptions were made—there being evidence that during the intervening winter such work was impracticable, and that the subscribers tacitly assented to the delay.

5 It appearing to this court from the present record that other suits upon the same instrument are pending in the court below, with an agreement of the parties that they shall abide the result of this case, this court directs that the court below render judgments in such other suits conformably to the rulings made in this case, although the judgment below is reversed, and the verdict set aside in the present cause,

APPEAL from Cherokee. Tried below before the Hon. Samuel L. Earle.

This suit was originally brought before a justice of the peace, by Cooper, the appellant, to recover some ten or twelve dollars subscribed by McCrimmin to the building of the bridge.

Though not adverted to in the opinion, otherwise than by a quotation, this case was before this court on a former appeal, and will be found reported in 27 Texas, 113.

On the present trial there was evidence, which is adverted to in the opinion, tending to show acquiescence by defendant in the delay of the construction.

The most noticeable feature of the present case is that this court, besides setting aside the verdict of the jury found in the court below, and reversing the judgment of that court, proceeds to render judgment for the appellant. With reference to this feature of the case it is proper to state that counsel for the appellee, after the opinion was delivered, moved the court to reform its judgment and remand the cause; and the late lamented Judge S. P. Donley, one of the counsel, filed an able and elaborate brief in support of the motion. He collected the several reported cases down

to 28 Texas, and it is deemed well to preserve his collection of them in this report. Nothing in the Reporter's hands indicates that any disposition was made of the motion to reform the judgment so that the case might be remanded for another trial below.

*T. T. Gammage*, for the appellant.—I take it that the true rule of law in such cases is as follows :

" If circumstances of a reasonable nature have disabled the party from a compliance, the suit will be treated with indulgence." (2 Story Equity, § 776.) And that in determining what is a reasonable time within which a contract shall be executed, all the circumstances surrounding or attending its execution will be considered by the court.

It is in proof in this case that appellant did build the bridge upon the strength of the subscriptions upon the paper. It is also in proof that all of the subscribers except the three appellees paid their subscription and ratified the acts of Cooper in building the bridge.

There was in this paper no time agreed on by the parties in which the bridge was to be built. Then the law must say what would be a reasonable time. There was no withdrawal or offer at withdrawal by appellees of their obligation on this paper. Then they are barred.

" If no time be agreed on and there be no express withdrawal, then the law must choose between the time of legal presumption, and the principle of reasonable time. * * The court would look into all the circumstances of each case, and inquire what the parties actually understood or intended, or regarding them as rational men, what they must be supposed to have intended." (1 Parsons on Con., 406.)

If McCrimmin had withdrawn or offered to withdraw his subscription, then he could not have been held to be liable upon the subscription paper ; but he passed often while Cooper was at work

XXXIII—25

on the bridge. They all lived in the same neighborhood, on the same side of the creek, within a mile or two of each other, and never at any time protested or objected to Cooper's working on the bridge; and the subscribers every now and then, one by one, paying to Cooper their subscription, it is but a fair inference that the appellee knew full well that Cooper would call upon him for his subscription, and that he would expect the pay.

In view of these things I respectfully submit that the rule is too stringent as laid down by Justice Moore in the case above referred to in 27 Texas.

*Bonner & Bonner*, for the appellee.—What is a reasonable time is, as a general rule, a question of law for the courts. (2 Parsons on Contracts, p. 47, and authorities cited in note 10; also 2 Parsons on Contracts, p. 173, and authorities cited in note 9.) Counsel have not access to the authorities therein cited. In same note, nine, it is also laid down "that it is not always a question for the court what is a reasonable time, for if the facts are not clearly established, or if the question of time depends upon other controverted facts, or when the motives of the party enter into the question, it has been said that the whole must necessarily be submitted to the jury."

Admitting this to be the true rule in this case, the appellee surely cannot complain of the charge of the court. The honorable judge, in his charge to the jury, says:

"What constitutes a reasonable time is a fact for the jury to determine from the surrounding circumstances;" also "the building of the bridge after the expiration of twelve months, is not a reasonable time, unless there be proof of the ratification or assent of the subscribers, or some unavoidable occurrence."

The subsequent part of the charge, that the building of the bridge after twelve months is not within a reasonable time, even had it been erroneous, does not affect it, for it is a well establishad

principle that the whole of a charge must be taken and considered together. (2 Tex. R., 284, Mercer v. Hall; 23 Tex. R., 452, Bagby v. Birmingham.)

But that part of the charge is not erroneous, because it was the law of this case, as declared, almost in the very language used, by the Supreme Court, on the first trial of this cause, where the rule is laid down expressly, that the building of the bridge twelve months after the subscription, without proof of the ratification or assent of the subscribers, and inferentially without proof of circumstances which unavoidably prevented its earlier completion, would not be within a reasonable time. (27 Tex. R., on page 116, McCrimmin v. Cooper.)

The charge gives the appellant the full benefit of all the contingencies, both express or implied, provided for by the highest tribunal in our State, and upon this very case.

The fourth error assigned is that the court erred in overruling plaintiff's motion for a new trial.

The only remaining ground for a new trial, not before necessarily adverted to in the preceding parts of this brief, is the third: that under the influence of the errors in the charge, the jury were constrained to find a verdict contrary to the evidence and the law of the case.

Having previously shown that the charge was as favorable for the appellent as he could ask, or as the law of the case justified, it only remains for us to examine, very briefly, whether the verdict was contrary to the evidence.

To have entitled the plaintiff to recover, he must have shown to the satisfaction of the jury the following facts: that the bridge was built on the faith of the subscription, and under the terms and intention of the subscription, and before the institution of this suit; that it was built within a reasonable time, or that some good reason was shown why not so built, or that the subscribers assented to or ratified the building after this reasonable time. But the appellant failed to establish a single one of these facts.

*S. P. Donley*, for the appellee, moved that the judgment of this court (as announced in the opinion) be so reformed as to remand the case for a new trial in the court below—citing the following cases : McKinney v. O'Conner, 26 Texas, 5 ; Colonization Society v. Reed, 25 supplement, Texas, 343 ; Townsend v. Smith, 20 Texas, 774 ; Givens v. Farquhar, Id., 455 ; Eccles v. Dodd, Id., 190 ; Monroe v. Searcy, Id., 348 ; Johnson v. McKissack, Id., 160 ; Matthews v. Hancock, Id., 7 ; Griffin v. Robertson, 19 Texas, 222 ; Forshey v. Railroad company, 16 Texas, 540 ; Haldeman v. Chambers, 19 Texas, 43 ; Cartwright v. Cartwright, 18 Texas, 643 ; Westall v. Worsham, 16 Texas, 182 ; Adriance v. Brooks, 13 Texas, 286 ; Reynolds v. Johnson, 13 Texas, 215 ; Bryan v. Bridge, 10 Texas, 154 ; Jewett v. Thompson, 8 Texas, 437 ; Franklin v. Mooney, 2 Texas, 455 ; Smith v. Power, 2 Texas, 70 ; Chevallier v. Buford, 1 Texas, 507.

The above cases were cited to show that this court had never claimed jurisdiction to render a judgment in opposition to the verdict on which judgment had been rendered in the court below. An elaborate and cogent argument was also filed by the counsel, but it is too long for insertion here, and an attempt to abbreviate it would do his positions injustice.

Morrill, C. J.—This suit was on a subscription paper to build a bridge, as follows : " We whose names appear below agree and bind ourselves to pay the amount annexed to our names to any person or contractor who may hereafter build a free bridge across Mud creek, at the place known as the burnt bridge on the road leading from the town of Rusk in Cherokee county to Henderson in Rusk county, and the same to be paid when the bridge is completed."

Among others the defendant signed his name to the instrument, and annexed ten dollars to his name. The document was executed in the summer of 1857, and the plaintiff made the bridge described in 1858.

It is not contended that the plaintiff did not make the bridge or that the bridge was defective. On the contrary it is beyond controversy that the bridge was made at the place, and was needful to the neighborhood, including the defendant.

The leading case in the Texas Reports, Hopkins v. Upshur, 20 Texas, 89, seems to be decisive of all the points that can possibly be raised here. In that case the contract was, " we the undersigned agree to donate the cash or property set opposite our names, for the purpose of erecting a Protestant Episcopal church in the city of Austin." It was contended in that case that first, it is wanting in proper parties, to-wit : a payee; second, it is wanting in mutuality ; third, it is wanting in a valid consideration.

The court, however, considered the objections invalid, and gave a judgment against the subscriber, reversing the judgment of the district court.

In the case of Doyle v. Glasscock, 24 Texas, 200, this court reviewed and approved the points established in the first named case. We may therefore consider these questions as the law of the State.

In the case before the court, the contract was "to pay any person who may hereafter build a free bridge." It was like a note payable to bearer, so far as relates to the payee. The consideration was not only a positive benefit to the promissor, but was the labor of the payee. The time of payment was when the bridge was completed, and as the instrument referred to no particular time for the completion of the bridge, and as the bridge was made during the summer afterwards, it would seem that no unnecessary delay was chargeable to the payee, especially when it was proved that during the winter following it was impracticable to make a bridge.

There was testimony in the case going to show that it was understood that the bridge was to be let out to the lowest bidder, and at a particular time and place. The instrument, however, is express and explicit that the money is to be paid " to *any person* or contractor who may hereafter build the bridge."

Whatever might be the understanding as to employing a contractor or person publicly, or whatever was done, or attempted to be done, can have no bearing on the merits of the case, since the instrument requires no explanation. The defendant had the privilege of withdrawing his name before the plaintiff began the work, but he not only did not do this, but approvingly saw the bridge in process of erection, and since the completion of the bridge has used it as a free bridge.

Had the instrument provided "that when the requisite amount should be subscribed, a committee was to be appointed, the contract let to the lowest bidder, and that the bridge was to be completed during the fall of 1857," a different case would have been presented; but such is not the tenor of the instrument, and parol evidence cannot be received to vary or contradict it, especially after the completion of the work, and to the detriment and in violation of the rights of the bridge builder.

The instrument might properly be regarded as a standing offer, to be accepted by any one. The subscribers needed the bridge just as much in 1858, or any subsequent year, as in 1857; and they therefore provided no definite time for the completion of the bridge, and the time for the payment of the money was when the bridge was completed.

The proceedings in the district court in this case furnish not only good reasons for parties to make their contracts in writing, but the propriety of the law excluding testimony to vary or contradict a written contract. The judgment is reversed, and judgment rendered in favor of plaintiff and appellant for the sum subscribed, and costs in all the courts.

From the record in this case we are led to infer that there were two other subscribers to the building of the bridge, and it seems that the three suits were by agreement blended, with the understanding that whatever judgment should be entered in the case against McCrimmin should also apply in the case wherein Levi

Needford subscribed five dollars, and Abraham Myers five dollars. The same principles of law that apply in the case against McCrimmin apply in the other cases, and the district court will enter such judgments in the other cases as may be required by the subscriptions.

Reversed and rendered.