# THE
# TEXAS LAW REPORTER

## AUSTIN, TEXAS, SEPTEMBER, 1883.

### WILEY WILLIAMS v. J. C. ROGAN, ET AL.

#### SUPREME COURT, AUSTIN TERM, 1883.

*Contract—Subscription to Charity.*—Sums subscribed were payable to trustees appointed by district conference for erection of Church building for school purposes, and "school was to begin as soon as possible, &c." *Held,* that it was only question of fact whether the delay of the work was reasonable. Vide opinion for discussion of authorities.

Appeal from San Saba County.

Opinion by Stayton, J.

In 1879, the district conference of the Methodist Episcopal Church South, in which district was situated the county of San Saba, proposed to the inhabitants of six competing counties, of which San Saba county was one, to establish a high school in such one of the competing counties as would contribute the sum of five thousand dollars to assist in erecting houses, &c., for such school.

In the month of June of that year a subscription was raised in San Saba county for that purpose, to which the appellant subscribed the sum of two hundred dollars, to be paid in four equal instalments, the first to be paid on or before the 1st September, 1879, the next January 1, 1880, another May 1, 1880, and the last on Sept. 1, 1880.

The payments were to be made under the terms of the subscription to such persons as the conference might appoint to receive it. The requisite sum was subscribed, and on the 19th day of July, 1879, the conference accepted the subscription, and agreed to locate the school and build the necessary house at the town of San Saba, in accordance with the terms of the subscription. Trustees to receive

the money and conduct the business, were appointed by the conference, and it is not questioned that the appellees are the trustees so appointed or their successors. On the 10th of September, 1879, the trustees met and made a small expenditure for stationery, and other purposes.

Another meeting of the trustees was had on the 20th of that month, for the purpose of determining by the vote of the subscribers, at which of two competing points in the town of San Saba, the school house should be erected, and at that meeting the appellant, by an authorized proxy, voted.

The building of the house for some reason not fully explained in the record, was postponed, and the building was not actually commenced until sometime in the year 1881, but it was subsequently completed. Some time in the fall or winter of 1879, but after the proposition of the subscribers had been accepted by the conference, and the plan for the erection of the house had been agreed upon, and a small expenditure of money made, the appellant made known to the trustees his determination not to comply with his subscription, and he now claims that he was thereby released from all obligations to pay it.

This is not the ordinary case of a subscription to some charitable or public purpose, in which there are no contracting parties except the subscribers; but the subscribers are the parties upon the one side, and the district conference, the party upon the other.

Upon the acceptance of the proposition of the conference, the subscribers being bound, as did the conference upon its acceptance of the subscription and agreement to build in accordance with the terms of the subscription. There was then a mutuality of engagement, so that each party had the right to hold the other to a binding agreement, and it became so previous to, or even without performance, and either party might enforce it. The rule is thus laid down by Mr. Parsons : "The party making the promise is bound to nothing until the promisee within a reasonable time engages to do, or else does or begins to do, the thing which is the condition of the first promise, until such engagement, or such doing, the promisor may withdraw his promise, because there is no mutuality, and therefore no consideration for it. But after an engagement upon the part of the promisee, which is sufficient to bind him, then the promisor is bound also, because there is now a promise for a promise,

with entire mutuality of obligation." 1 Parsons on Contracts, 450.

The parties have concurred in expressing the common intention, and this with a view that such expressions should determine their respective rights, and duties; and this in legal contemplation constitutes an agreement, which if supported by a sufficient consideration, makes a legal and binding contract. The several stages and essentials of contract are, perhaps, nowhere more clearly expressed than in the interpretation clause of the Indian Contract Act of 1872, which will be found in Pollock's Principles of Contract 7, as follows:

"(a). When one person signifies to another his willingness to do, or to abstain from doing anything, with a view to obtaining the assent of that other, to such act or abstinence, he is said to make a proposal.

(b). When the person to whom the proposal is made signifies his assent thereto, the proposal is said to be accepted. A proposal when accepted becomes a promise.

(c). The person making the proposal is called the 'promisor,' the person accepting the proposal is called the 'promisee.'

(d). When at the desire of the promisor, the promisee, or any other person has done or abstains from doing, orders or abstains from doing, or promises to do or to abstain from doing something, such act or abstinence or promise, is called a consideration for the promise.

(e). Every promise and every set of promises forming the consideration for each other, is an agreement."

In the case before us we have the double proposals; the double acceptances, the mutual promises, and the thing promised to be done upon the one side actually completed; this gives the right to enforce performance from the other.

In the case before us there was no revocation of the promise made by the appellant until his proposition had been accepted by the conference, and even after that time, by participating in the selection of a place for the location of the house, he emphasized his intention to be bound; all of this occurred after the trustees, to whom by the terms of the subscription, the same were to be paid, had been appointed, and they had accepted the position.

Among the cases which held such contracts binding, are the following : Hopkins v. Upsher, 20 Texas, 93; Doyle v. Glasscock, 24

Texas, 201; Rose v. Railroad Company, 31, Texas, 58; McMillan v. Railroad Company, 15 B., Monroe, 233; Comstock v. Howd, 15 Mich., 242; Watkins v. Eames, 9 Cush., 539.

The case of Cottage Street Church v. Kendal, 121 Mass., 529, is referred to in elementary works as an authority to the contrary, but the facts upon which the opinion is based, do not justify the construction placed upon the opinion in which Gray, C. J. uses the following language : "In every case in which this court has sustained an action upon a promise of this description, the promisee's acceptance of the defendant's promise, was shown either by express vote or contract, assuming a liability or obligation, legal or equitable."

Whether the mutual promises of the subscribers would be a sufficient consideration, need not be examined; for this case rests upon contract between the district conference and the subscribers, in which the latter were the judger as to whether the benefit to result to them by the establishment of the school in the place, justified their several subscriptions.

It is further claimed that the appellant was released by the failure to build the house promptly. The argument was that the "school should be put in operation as soon as possible *after the collection* of the necessary funds for said purpose."

The buildings were not to cost less than five thousand dollars, and the subscription amounted to but little over that sum, but the house cost more.

The very object as evidenced by the subscription agreement was to raise the sum requisite to do the work, and as that was made payable in instalments, it is probable that none of the parties contemplated that the work should be commenced at once. Such was not the agreement of the parties, and the appellant could not well be heard to say that by his own failure at least in part, to pay the instalments on his subscription as he had agreed to do, he could place the other party in default, in not doing what they had agreed to do so soon as it could be done after he and others had complied with their agreement. The payments were not conditioned upon the completion of the work in a given time, but it must have been understood by all parties that the work was to be done when the subscriptions were paid. At most it would be a question of fact, under all of the circumstances of this case, whether the delay in

erecting the house and estalishing the school, was an unreasonable one, or even a longer delay than was contemplated by the parties at the time the subscription was made.

There is no error in the judgment, and it is affirmed.