| 39 | 23 |
|----|----|
| 48 | 486 |

</div>

## THE TOPEKA MANUFACTURING COMPANY v. GEORGE D. HALE, *as Assignee of the Capital Iron Works.*

1. SUBSCRIPTION TO STOCK ; *Void Parol Agreement.* A parol agreement made at the time of subscribing for stock, and inconsistent with the written terms of a subscription, is immaterial, incompetent, and void.

2. WRITTEN SUBSCRIPTION, *Binding — No Release by Parol Agreement.* An agreement to pay assessments on the stock contained in the book of subscription, and signed by the party sought to be charged, will bind him, notwithstanding some verbal understanding or agreement that some other member of the corporation will release such party from such stock and liability.

3. CANCELLATION — *Question of Fact — Conclusive Finding.* Where it is claimed by a stockholder that the stock held by him had been canceled, but no resolution or minute is adopted by the board of directors, and no record thereof is made, and where it is further shown that the stockholder continued to act as an officer of said company after such claim of cancellation, *held*, that the question of a cancellation under such circumstances is a fact to be found by the court, and a finding on such question is conclusive.

4. VALID TRANSFER, *How Made.* To make a valid transfer of stock in a corporation, the transfer must be made on the books of the corporation.

*Error from Shawnee District Court.*

ACTION brought by *George D. Hale,* as assignee of the
Capital Iron Works, against *The Topeka Manufacturing Com-
pany,* to recover the sum of $6,464.58, alleged to be due the
plaintiff upon notes given by said defendant and over-due,
and also on a book account of merchandise furnished said de-
fendant.   Upon this claim judgment was rendered against the
defendant on the 8th day of September, 1885, in the district
court of Shawnee county, for the full amount thereof, to wit,
$6,800.   On the 12th day of September, 1885, an execution
was issued in due form on said judgment, on which the sheriff
made return that no property could be found whereon to levy
the execution.   Afterward a motion was filed for an execution
to issue against R. M. Mills, as a stockholder of said corpora-
tion, under the provisions of § 32, art. 4, ch. 23, Comp. Laws
of 1885, which motion was heard on the 11th day of January,
1886, and was by the court sustained.   The court made special
findings of fact, as follows:

"1.  For the plaintiff generally, and against R. M. Mills.
"2.  That plaintiff did, on the 8th day of September, 1885,
recover in this court a judgment against defendant, the To-
peka Manufacturing Company, a corporation organized and
existing under the laws of the state of Kansas, for the sum of
$6,800, and the sum of $8.50 as costs, and which judgment
is wholly unpaid; that on the 8th day of September, 1885,
an execution was issued against the property and effects of
defendant, directed to the sheriff of the county of Shawnee in
the state of Kansas, upon said judgment, and that said execution
was on the 8th day of September, 1885, returned by the sheriff
wholly unsatisfied, and stating and certifying that there could
not be found any property real or personal whereon to levy
said execution.
"3.  That said R. M. Mills is and has ever been since the
1st day of July, 1883, a stockholder of the defendant, the
Topeka Manufacturing Company, and owned and now owns
ten shares of its capital stock, of the par value of one hundred
dollars per share, and aggregating the sum of one thousand
dollars, upon which he has paid the sum of one hundred and

fifty dollars, leaving unpaid thereon the amount of eight hundred and fifty dollars.

"4. That the defendant, the Topeka Manufacturing Company, is a corporation organized and existing under the laws of the state of Kansas, and is neither a railway, religious nor a charitable corporation.

"5. That the defendant, the Topeka Manufacturing Company, at the time said judgment was rendered was, and ever since has been, insolvent."

Upon said findings an execution was ordered to be issued against R. M. Mills for the sum of $1,850, the balance due on the stock, and for the face value thereof. To reverse the order made as aforesaid, Mills brings the case here.

*J. S. Ensminger,* for plaintiff in error.

*John T. Morton,* for defendant in error.

Opinion by CLOGSTON, C.: The correctness of the judgment of the court below depends upon the question whether or not Mills was a stockholder of the Topeka Manufacturing Company at the time of the contracting of the debts and the rendition of this judgment. If he was, then this judgment is correct. It is claimed by the plaintiff in error, (and the evidence on his part tends to establish that fact,) that some time after the organization of the Topeka Manufacturing Company, trouble arose between some of its officers and its president, and that plaintiff was induced to become a stockholder in the company for the purpose of being elected president of the company, and that for such purpose he subscribed for ten shares, of the value each of $100 of the capital stock, which subscription upon its face shows such subscription to have been unconditional; and after such subscription he was duly elected president of said corporation, and continued to act as such president until the 29th day of December, 1883. He alleges and claims that at the time of making said subscription there was a verbal understanding between himself and some members of the company that he should be relieved of his stock after the difficulties were settled in the company, and

that he paid on said stock and subscription but $150, being the first installment due thereon; that he was notified to pay the remainder of said stock, which he refused to do, and afterward his stock was canceled. He also claims that he afterward turned over his receipt for the money so paid to Mr. Bean, a stockholder in said company, and that Bean paid him $150 for his interest. The testimony of the secretary of the company shows substantially that no written notice was ever served upon the plaintiff in error notifying him to pay in the remainder of his assessments, or that his stock had been canceled, but does show that at some meeting of the directors of the company Mills was present, and by some mutual understanding it was agreed that Mills might turn over his interest to Bean, and that his stock might then be canceled; but no record was made of this understanding, and in fact no resolution or motion was made to that effect. It was also shown that the corporation was at that time, and ever since has been, insolvent.

Plaintiff's first claim is that his subscription to said capital stock was conditional; and second, if not conditional, then it was canceled by his failure to pay the amount due on said subscription; and third, if not so canceled, then by the consent of the directors his stock was transferred to Bean, and he was released from liability. It further appears that the indebtedness upon which this judgment was obtained and execution issued was contracted after said claim of transfer of said stock from Mills to Bean. We are of the opinion that the claim of the plaintiff is not well taken. The stock books of the company, which were offered in evidence, clearly showed that the subscription was made unconditionally. He subscribed for ten shares of the stock, and agreed to pay the amount due on said subscription to the company; no qualification is attached to it, and no mere understanding, in fact no action of the board of directors, could cancel this subscription or change its effect, or release the plaintiff from liability, except for non-payment. The power to release from liability as a stockholder can only be exercised by the stockholders, or by

the directors of a company by the authority of the stockholders; and nothing of that kind was shown in this case. The evidence shows that there was no cancellation; no record of any such transaction was shown to exist; and while it is claimed on the one hand that there was a mutual agreement that the stock should be canceled, yet after that we find plaintiff attempting to transfer to Bean whatever interest he may have had, and claiming himself that Bean paid him $150, the amount paid on said stock by him. This then shows that plaintiff did not understand that this stock was canceled by reason of non-payment. If it was canceled for non-payment, the amount paid in on the stock would have become the property of the company, and neither Mills nor the directors of the company could have transferred or given credit for that sum to anyone else; and any contract or arrangement of that kind, by which it was to be transferred to Bean after it was canceled, would be *ultra vires*. Then, was there a transfer? The statute provides how stock may be transferred, and that it can only be done upon the books of the company. Now there is no pretense in this case that a transfer on the books of the company had ever been made; the stock in fact was never issued, and no transfer of the right to receive the stock is shown by the record to have been transferred to anybody. What arrangement Mills may have had with Bean was a matter between themselves. Mills could have directed that the stock be issued to Bean, if he wished to, but that would not have released him. Bean may have agreed to release Mills by the payment of this $150; that was a contract between themselves. Bean may be liable on that contract to Mills; but if he is, that would not protect Mills in this action.

We are therefore of the opinion that the findings of fact by the court are sustained by the evidence. It was a question of fact to be found by the court, and its findings of fact upon the evidence are conclusive.

We therefore recommend that the judgment of the court below be affirmed.

By the Court: It is so ordered.

All the Justices concurring.