## The San Antonio & Aransas Pass Railway Company v. N. T. Wilson.

### No. 6.

**1. Subscription—Breach of Contract.**—Appellee and others subscribed to enable appellant to extend its road, in consideration of benefits to accrue to subscribers, and of the issuance to them of first mortgage bonds by appellant, on payment of subscription and the completion of the road, in amounts equal to their subscriptions. *Held*, that appellee having paid his subscription of $1000, was entitled to recover a bond for that sum, less three years interest coupons; nor was the delivery of the bond to him conditioned upon what may have afterwards transpired between appellant and the other subscribers.

**2. Measure of Damages.**—The rule for estimating the value of chattels having a fluctuaaing value, is the highest market value of the chattel between the date of breach and the trial, with interest from date of valuation fixed, unless plaintiff has unreasonably delayed bringing suit.

**3. Immaterial Error.**—The admission of incompetent testimony in a trial before the judge is no ground for reversal where there is sufficient testimony to sustain the judgment. See example.

**4. Evidence—Parol Evidence.**—The court below properly excluded the following answer: "I understood the contract to be, that the company would build the northwestern extension to Kerrville, and deliver 280 of its first mortgage bonds, with three years coupons deducted, for the sum of $280,000, to be paid by subscribers who wanted the road." The contract being in writing, its terms could not be varied by parol evidence, and under it each subscriber, upon payment, was entitled to bond for the amount of such subscription.

Appeal from Kendall. Tried below before Hon. T. M. Paschal.

Appellee brought this suit to recover of appellant the value of a $1000 first mortgage 40-year 6 per cent bond on its northwestern extension from San Antonio to Kerrville.

For a further statement, see opinion of the court.

*Wm. Aubrey*, for appellant.

*J. H. McLeary*, for appellee.

JAMES, Chief Justice.—*Conclusions of Fact.*—The court's conclusions of fact from the record are as follows: That on June 4, 1886, various persons, including appellee, executed what was called a subscription paper, each agreeing to pay to the appellant, as subscription to the latter's first

mortgage bonds, the sum of money set opposite their names respectively, to be paid in monthly installments of 10 per cent, the first installment to be paid when work should begin upon the grading of the northwestern extension of appellant's road, and 10 per cent every thirty days thereafter until the whole amount was paid. Said subscription paper was signed by appellee Wilson, and opposite his name appears written the sum of $1000. It also recites, in substance, that said railway company proposes to build an extension of its main line northwesterly from San Antonio, and in order to do so, it is necessary for said company to market a portion of its bonds upon said extension; and that whereas the signers will be greatly benefited by said extension; therefore, in order to secure the construction of the proposed extension, the signers agree to pay said sums of money respectively, as subscription for first mortgage bonds of said company at par; and provides further, that no more than $4000 of bonds per mile shall be delivered to subscribers; and also, that three years interest coupons shall be taken off said bonds before delivery, and that subscribers should not be entitled to such coupons nor any interest on the bonds for such three years; the railway company agreeing and binding itself to complete the road to Kerrville, seventy miles northwesterly of San Antonio, within fifteen months from the commencement of work on said extension. It appears also that the total of these subscriptions did not exceed $4000 per mile. The court further concludes, that the extension was completed to Kerrville not later than September, 1887, and that at that time appellee had paid to the railway company his subscription of $1000 in full. That the appellant has failed to deliver the appellee any bond, but on the contrary hypothecated or made other use of the same. That the bonds were of the denomination of $1000, and bore 6 per cent interest per annum. That the market value of the bonds of said railway company was 85 cents on the dollar at some date between July 25, 1889 (the filing of the suit), and October 25, 1889 (the date of the trial), the date not being fixed with more certainty, this evidence being in deposition, the date of which is not disclosed in the record; such valuation applying to bonds with all the coupons attached. It also appeared that the bonds had been issued to carry on the work of the extension.

*Conclusions of Law.*—1. That by said contract of subscription, appellee, having then paid his subscription in full, was entitled to the delivery to him of one of the $1000 bonds upon the completion of the road to Kerrville (September, 1887), less three years interest, as agreed.

2. That by reason of nondelivery thereof, appellee was entitled to recover of appellant damages, to be measured by the highest market value of such bond between the default and the trial, less the three years interest at 6 per cent, as agreed, the balance to be computed with 8 per cent interest from the date of valuation fixed.

3. That this valuation shown by the evidence was 85 cents on the dollar, and related to the time of the taking of a deposition (date not shown by the record), but which was after July 25, 1889; hence the District Court erred in allowing interest from July 1, 1889, and the court also erred in not allowing appellant for the three years interest as stipulated.

4. The appellee having remitted any and all interest prior to the judgment, we conclude the judgment should be reversed and rendered in favor of appellee for the sum of $850, less $180, to-wit, $670, with 8 per cent interest thereon from October 25, 1889, the date of judgment, and all costs of the District Court; and that appellee be adjudged to pay the costs of this court.

*Opinion.*—The district judge did not err either in refusing to quash the citation, or in overruling the defendant's general demurrer.

The third assignment of error complains of the admission as evidence of a certified copy of the record of a deed of trust from the San Antonio & Aransas Pass Railway Company to the Farmers Loan and Trust Company. The bill of exceptions touching this matter sets forth, that this certified copy was objected to; because, first, defendant had no notice thereof; second, the affidavit on file to admit the same was not sufficient; third, the evidence was immaterial and irrelevant.

The second of said grounds we can not consider, as the affidavit is not set forth in the bill of exceptions, or elsewhere in the record. It is evident that defendant did not have the requisite notice of its filing, for it was not filed until the day of the trial. As the cause was tried without a jury, and appellant admits that this evidence was of an immaterial character, and there is sufficient other evidence in the record that would entitle appellee to a judgment for some amount, there is no reason for considering this exception further.

Error is assigned on the refusal of the court to admit as evidence the following answer of B. F. Yoakum to an interrogatory in reference to what the contract was between the railway company and those desiring the building of the northwestern extension of its road: " I understood the contract to be, that the company would build the northwestern extension to Kerrville, and deliver 280 of its first mortgage bonds, with three years coupons deducted, for the sum of $280,000, to be paid by subscribers who wanted the road." Appellant contended, that the contract of subscription upon which the suit is brought was an entire and indivisible one with all the subscribers, and that the company was not required to deliver bonds to any subscriber unless all of the subscribers had paid. The contract will not bear that construction, and being in writing, it was not competent for its terms to be varied or controlled by parol testimony of any kind, and the evidence was properly excluded. The contract of subscription, or subscription list, as it is called, was the same

that is set forth at length in the case of San Antonio & Aransas Pass Railway Company v. Busch, 21 S. W. Rep., 164, and it need not be copied here.

The receipts given by appellant to appellee, upon payment by the latter of the several installments of 10 per cent of his subscription, recite upon their face that such installments were received subject to the terms of appellee's subscription to the first mortgage forty-year 6 per cent bonds of the San Antonio & Aransas Pass Railway Company. The subscription list was clearly the contract upon which the rights of the parties depend, and its terms are not ambiguous. It contemplated the delivery by appellant to appellee of one of its $1000 bonds, upon payment of appellee's subscription; and such payment having been made prior to the completion of the road to Kerrville, appellee was at that time entitled to the bond, less three years interest coupons. Appellee agreed to pay $1000 for that much in bonds; he did not contract to pay a larger sum conjointly with others, nor was the delivery of his bonds conditioned upon what may have afterwards transpired between the company and the other subscribers. The rule for estimating damages for nondelivery of a chattel having a fluctuating value, is the highest market value of the chattel between the date of the breach and the date of the trial, with interest to be computed from the date of valuation fixed, unless the plaintiff has unreasonably delayed bringing his suit. Calvit v. McFadden, 13 Texas, 324; Masterson v. Goodlett, 46 Texas, 402; Railway v. Jackson, 62 Texas, 212. We do not believe that the bringing of the suit was unreasonably delayed. The above rule was not applied by the judge trying the case, and in this there was error.

The witness B. F. Yoakum testified by deposition in reference to the bonds (and this was all the evidence as to value), "Such bonds, with all the coupons attached, will sell now in the market at about 85 cents."

We do not agree with appellant, that this valuation was of the bonds independent of the three years coupons. The witness states distinctly that he referred to bonds with all the coupons attached. If the testimony had related to the bonds without three years coupons, the interest would not be deducted again. At what time the deposition of Mr. Yoakum was taken, and to what date his testimony referred, the record before us does not disclose, except the necessary inference that it was taken between the filing of the suit and the trial. Hence we would be unable to fix the time from which this market value should have borne interest. Appellee has consented in his brief to a remittitur of interest. With this element out of the case, the facts before us and the prayer contained in plaintiff's pleadings enable us to render such judgment here as should have been rendered on the trial, and we conclude that appellee should recover of appellant the sum of $850, less $180, three years interest at 6 per cent, to-wit, $670, with 8 per cent interest per annum

thereon from October 25, 1889, and all costs of the District Court, and that the judgment of the District Court be reversed and rendered accordingly; the costs of this court to be adjudged against appellee.

*Reversed and rendered.*

Delivered September 13, 1893.