HERRON-ROBBINS et al. v. ALLEN.

(Court of Civil Appeals of Texas. Ft. Worth. June 14, 1913. Rehearing Denied Oct. 18, 1913.)

1. CONTRACTS (§ 305*)—PERFORMANCE—DELAY —WAIVER—INSTRUCTIONS.

Where the amount payable under a contract to subscribe to the sinking of a test oil well was payable at the beginning of operations, and defendant did not make any objection to the delay in beginning the well until it had been sunk a considerable distance, he waived any delay in beginning to drill, so that it was error to instruct, in an action on the contract, that the jury should find for defendant, if plaintiffs did not begin drilling within a reasonable time or use reasonable diligence to complete the well.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1398, 1399, 1400, 1463, 1464, 1467–1475; Dec. Dig. § 305.*]

2. EVIDENCE (§ 441*) — PAROL EVIDENCE — MODIFYING CONTRACT.

Under a written contract merely binding defendant to contribute to the drilling of a test oil well, and providing that the contribution should not be paid until operations began, the well could be drilled in the customary way by using such tools as would be most advantageous to the drillers, so that it could not be shown in an action on the contract that the agreement was to drill with "cable tools."

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. § 441.*]

3. EVIDENCE (§ 441*) — PAROL EVIDENCE — MODIFYING CONTRACT.

In an action upon a contract by defendant to subscribe a certain sum for the drilling of a test oil well, it could not be shown that the other party to the contract agreed to contribute a certain sum of money, where the contract did not so provide, especially where such amount was contributed in the form of an interest in realty.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1719, 1723–1763, 1765–1845, 2030–2047; Dec. Dig. § 441.*]

4. CONTRACTS (§ 301*)—SUFFICIENCY OF PERFORMANCE.

An action against defendant on his contract to contribute a certain sum for the drilling of a test oil well, payable when the drilling was begun, could not be defended by him on the ground of unreasonable delay in completing the well, especially where he himself refused to pay his subscription according to agreement; his remedy being an action for damages.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1388–1397; Dec. Dig. § 301.*]

Appeal from Wichita County Court; C. B. Felder, Judge.

Action by Herron-Robbins and others against R. S. Allen. From a judgment for defendant, plaintiffs appeal. Reversed and rendered.

Smoot & Smoot, of Wichita Falls, for appellants. Montgomery & Britain, of Wichita Falls, for appellee.

CONNER, C. J. This appeal is from a judgment denying appellants a recovery upon a subscription contract made by the appellee to give $500 for sinking a test well for oil; the obligation sued upon being as follows: "Electra, Texas, 4–21–1911. This is to certify that I, R. S. Allen, agrees and binds himself to contribute $500.00 to Herron-Robbins and associates for the purpose of drilling a test well to a depth of 2,000 feet unless oil or gas is found at a less depth in paying quantities; said well to be drilled on the Richard Mead, known as the W. B. Honaker land, said above-mentioned amount not to be paid until operations begin on said well. [Signed] R. S. Allen."

We think the court erred as complained of in the fourth assignment in giving the following charge: "If you find and believe from the evidence that the plaintiffs did not begin drilling of such well within a reasonable time or did not use reasonable diligence to complete such well, then you will find for the defendant."

[1] While the evidence is to the effect that appellants did not begin the boring of the well for about three months after the execution of the contract and did not have it completed for some 10 or 12 months, yet the charge seems inapplicable, in that the obligation by necessary implication was payable at the beginning of operations, and the evidence seems undisputed that appellee made no objections whatever to the delay in beginning the well (for which delay appellants gave reasonable explanation) until after appellants had sunk the well some 1,200 feet. It is evident, therefore, that appellee waived any objection that he might otherwise have had to the delay in beginning, and the delay in completion, if not sufficiently accounted for in the evidence, is not shown to have in any way operated to appellee's prejudice, as will hereinafter be shown. The charge, therefore, authorized a verdict for appellee upon immaterial issues which

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key-No. Series & Rep'r Indexes

should not have been done in the state of the evidence as we find it.

In various forms the following paragraph of the court's charge is also objected to, viz.: "If you find and believe from the evidence that at the time of the execution of the instrument sued upon the plaintiffs or any of them represented to the defendant and promised the defendant that such test well was to be drilled with cable tools, and if you believe that defendant relied upon such representation and but for such representation would not have signed such instrument, and you further find that such representation was untrue and fraudulent, then you will find for the defendant."

[2] Appellee pleaded as a defense that he had been induced to execute the contract sued upon, among other things, by the promise of appellants to drill the well with "cable tools." It is undisputed that the well in fact was dug to a depth of 2,006 feet; the evidence, however, shows that the well was drilled with cable tools to the depth of about 1,200 feet only, but we do not think this fact constitutes a defense. The contract quoted upon its acceptance by appellants became the contract of the parties. It was in writing and in legal effect it gave appellants the privilege of drilling the well in at least a customary way and with such tools or apparatus as in their judgment would accomplish the desired result and at the same time be to them the most advantageous, and they cannot be bound by a limitation not inserted in the written contract; neither fraud, accident, nor mistake having been pleaded. In the case of Burch v. Railway Co. 80 Ga. 296, 4 S. E. 850, Burch had signed a written agreement to give the railway company right of way for 30 feet over his lands "if the survey of the railroad should run through his lands" and sought to defeat the obligation when sued thereon by offering himself and others to prove what he stated to the agent of the railway company before he signed the paper; that is, that they might run through his land if they desired to do so, but that they must come along a certain ditch. This testimony was objected to and sustained by the lower court, and the ruling was approved by the Supreme Court of Georgia, which said: "We think that testimony was obnoxious to the rule that parol evidence is inadmissible generally to contradict or vary the terms of a written instrument." In the case of Chattanooga R. & C. R. Co. v. Warthen, 98 Ga. 599, 25 S. E. 988, also by the Supreme Court of Georgia, it was sought to defeat a stock subscription contract on the ground, among other things, that the subscription (which was in writing) had been induced by the promise or representations of the agent who procured the subscription that the railway should be located along the line of a certain old roadbed extending through the town of Lafayette. The written subscription provided only that it should be void "unless the main line of the said railroad when built shall pass through the corporate limits of the town of Lafayette." The court said: "Under the contract of subscription, we think the railroad company had a right to run its track anywhere within the corporate limits. The contract did not specify any particular line or route through the town, nor did it provide how far it should run from the corporate limits. It simply provided that it should run through the corporate limits. If that was done, it was a sufficient compliance with the contract, so far as the location of its route was concerned." In the case of Masonic Temple Association v. Channell, 43 Minn. 353, 45 N. W. 716, by the Supreme Court of Minnesota, a defendant sought to defeat a subscription for stock upon the ground, among other things, that at the time of subscribing "he orally made it a condition that the corporation should incur no debt." The court said: "As the contract of subscription was in writing, of course the evidence was incompetent." In Cooper v. McCrimmin, 33 Tex. 383, 7 Am. Rep. 268, by our own Supreme Court, it was held to be incompetent for a subscriber to vary or contradict a subscription paper or parol proof that the building of bridge was to be let out to the lowest bidder; there being no such provision in the paper itself. In other words, the authorities seem to be uniform to the effect that, where the subscription contract is in writing, parol representations or agreements made by the solicitor which are inconsistent with the written terms of the subscription are inadmissible unless fraud or mistake in the execution of the contract be pleaded and shown, and that was not done in this case. See Clegg v. Galveston Hotel Co., 1 White & W. Civ. Cas. Ct. App. § 621; S. A. & A. P. Ry. Co. v. Wilson, 4 Tex. Civ. App. 178, 23 S. W. 282; Topeka Mfg. Co. v. Hale, by the Supreme Court of Kansas, 39 Kan. 23, 17 Pac. 601; Langford & Orton v. Ottumwa Water Power Co., 59 Iowa, 283, 13 N. W. 303; Jones et al. v. Turnpike Co., 7 Ind. 547; Dill et al. v. Wabash Valley Ry. Co., 21 Ill. 91. The charge was therefore erroneous as urged in the fifth and sixth assignments, and the evidence offered in support of the issues was likewise objectionable as complained of in the twelfth assignment.

Error is also assigned to the second paragraph of the court's charge which is as follows: "If you find and believe from the evidence that, prior to or at the time of the signing of the instrument sued upon, the plaintiffs, or any of them, represented to the defendant that the Texas Company has agreed to give to plaintiffs $2,000 towards the drilling of said well, and you further find that such representation was untrue, and that said Texas Company had not in fact prom-

ised to pay $2,000, and you further find and believe that the defendant believed such representation to be true and relied on the same, and but for such representation, if any, would not have signed such instrument sued on, then you will find for the defendant."

[3] Appellee pleaded not only that the representation submitted in the charge had been made, but that his subscription had been made on the "condition that the Texas Company should give $2,000," and "that it was expressly agreed and understood that said instrument (the one declared on) was signed upon that express condition and stipulation and that the plaintiffs and each of them at the time of the signing of said instrument and thereafter promised and agreed with defendant that if the said Texas Company and Clay Co. Company did not contribute the amounts herein before set out that this obligation would not be binding upon the defendant and further agreed to return to the defendant the written instrument sued upon." The uncontradicted evidence shows that the plaintiffs in the suit received, in lieu of a $2,000 cash contribution (which had been first promised), a lease on 500 acres of land of the value of $5,000, and what we have said in disposing of the fifth, sixth, and twelfth assignments also applies to this defense; but we wish to here add that, as presented in the charge under consideration, the issue seems to be immaterial under the undisputed evidence. The principal purpose of appellee's subscription—the sinking of a test well—was accomplished, and the confidence of the officers of the Texas Company in the locality where the well was to be dug was as clearly manifested by the contribution actually made as if the contribution had in fact been as appellee alleged.

Appellee insists, as a reply to all assignments, that the proof without dispute shows that the well was not completed within a reasonable time, and that therefore the judgment is right regardless of the errors, if any, committed in the trial; but we think this contention also must be overruled. It is true that there was testimony in behalf of appellee, to the effect that such a well might reasonably be dug within three or four months; but appellants account for the delay shown in part because of a broken "working beam" and inferably also because of a lack of funds, which they attempted to supply by the sale of oil lots situated near the test well in question, and neither by proof nor allegation is it shown that appellee was in any wise prejudiced by the delay in the completion of the well. It is to be observed that by the terms of his subscription contract the money he subscribed was due and payable in the beginning and not upon the completion of the well.

[4] The evident purpose of the subscription was, in part at least, to secure the funds with which to make the test, and appellants therefore were immediately upon beginning the well entitled to receive appellee's $500 subscription. If thereafter there was unreasonable delay in the completion of the well and appellee in fact thereby suffered damage, his remedy would be a suit for the recovery of the damage. Under the circumstances, it seems unreasonable to relieve appellee on the ground of a delay evidently caused in part by his refusal to pay the $500 in accordance with the terms of his written agreement.

We conclude that appellee presented no legal defense to the obligation sued upon, and that under the undisputed evidence appellants were entitled to recover as prayed for. It is, accordingly, ordered that the judgment be reversed and here rendered in appellants' favor in accordance with the prayer of their petition.