## Presbyterian Board of Foreign Missions v. Smith, Appellant.

*Contract—Consideration—Test of good consideration.*

A test of good consideration for a contract is whether the promisee at the instance of the promisor, has done, forborne or undertaken to do anything real, or whether he has suffered any detriment, or whether in return for the promise he had done something that he was not bound to do or had promised to do some act or has abstained from doing something. If any of the elements of such test be established the consideration becomes sufficient to support a promise although its inadequacy may be grossly disproportionate to the promise. The law does not consider such inadequacy.

Where a person gives an obligation to a foreign missionary society to pay a sum of money designated, on condition that the society will expend the money in foreign mission work in a particular field, and thus establish a memorial to the donor's mother, and the society accepts the obligation, receives a payment on account, sends missionaries to the particular field designated, and refrains from collecting other money for that field, the obligation is based upon sufficient consideration, and recovery may be had upon it against the estate of the maker after his death.

The general trend of judicial decision is in the direction of sustaining contracts for subscriptions or donations to churches, or charitable or kindred institutions where the same have been duly accepted, their acceptance constituting a good consideration for the reason that obligations are thereby assumed. Per THOMPSON, J.

Argued May 3, 1904. Appeal, No. 98, Jan. T., 1904, by defendant, from judgment of C. P. Warren Co., Dec. T., 1902, No. 10, on verdict for plaintiff in case of Board of Foreign Missions of the Presbyterian Church in the United States of America v. Sam. Q. Smith, Executor of M. Waters, Deceased. Before MITCHELL, C. J., BROWN, MESTREZAT, POTTER and THOMPSON, JJ. Affirmed.

Assumpsit on an obligation in writing. Before THOMAS, P. J.

The facts are stated in the opinion of the Supreme Court.

The court refused binding instructions for defendant.

Verdict and judgment for plaintiff for $2,199.65. Defendant appealed.

*Error assigned* among others was refusal of binding instructions for defendant.

*Edward Lindsey* and *W. E. Rice*, with them *W. D. Hinckley, J. H. Alexander* and *Earle V. MacDonald*, for appellant.—The paper writing on which the plaintiff seeks to recover in this case is a promise to give to a charity, without consideration, and as such was revoked by the death of Waters and is not binding on his estate: Thum's Est., 18 Pa. C. C. Rep. 615; Cottage St. Church v. Kendall, 121 Mass. 528; Pratt v. Elgin Baptist Society, 93 Ill. 475; Helfenstein's Est., 77 Pa. 328; Kennedy v. Ware, 1 Pa. 445; Smith's Est., 144 Pa. 428; Phipps v. Jones, 20 Pa. 260; Yard v. Patton, 13 Pa. 278; Trough's Est., 75 Pa. 115; Withers v. Weaver, 10 Pa. 391; Kidder v. Kidder, 33 Pa. 268; Scott v. Lauman, 104 Pa. 593; Appeal of Waynesburg College, 111 Pa. 130; Kern's Est., 171 Pa. 55; McNutt v. Loney, 153 Pa. 281; Flanagan v. Nash, 185 Pa. 41; Walsh's App., 122 Pa. 177; Cowen's Est., 3 Pitts. 471; Clapper v. Frederick, 199 Pa. 609; Hafer v. McKelvey, 23 Pa. Superior Ct. 202; Hamilton College v. Stewart, 1 N. Y. 581; Reimensnyder v. Gans, 110 Pa. 117; Presbyterian Church v. Cooper, 112 N. Y. 517; Johnson v. Otterbein University, 41 Ohio, 527.

*C. W. Stone* and *D. I. Ball*, for appellee.—The paper writing on which the plaintiff seeks to recover in this case is an obligation founded on a valid and sufficient consideration, and as such is binding on the estate of M. Waters, the obligor : Irwin v. Webster, 36 L. A. R. 239 ; Helfenstein's Est., 77 Pa. 328; Collier v. Baptist Education Society, 8 B. Monroe, 68 ; Ladies' Collegiate Institute v. French, 82 Mass. 196 ; Maine Central Institute v. Haskell, 73 Me. 140 ; McDonald v. Gray, 11 Iowa, 508 ; Kentucky Female Orphan School v. Fleming, 73 Ky. 234 ; Keuka College v. Ray, 167 N. Y. 96 (60 N. E. Repr. 325) ; Roche v. Roanoke Classical Seminary, 56 Ind. 198 ; Garrigus v. Home Frontier & Foreign Missionary Society, 3 Ind. App. 91 (28 N. E. Repr. 1009) ; Johnston v. Wabash College, 2 Ind. 555 ; Albert Lea College v. Brown, 60 L. R. A. 870 ; Amherst Academy v. Cowls, 23 Mass. 427 ; Phipps v. Jones, 20 Pa. 260 ; Pierson's Est., 18 Pa. C. C. Rep. 651 ; Farmington Academy v. Allen, 14 Mass. 172 ; Homes v. Dana, 12 Mass. 190 ; Hart's Est., 7 W. N. C. 162 ; Methodist Episcopal Church v. Garvey, 53 Ill. 401.

OPINION BY MR. JUSTICE THOMPSON, May 25, 1904 :

The appellant's contention in this case turned upon the question whether there was a good consideration for the instrument of writing upon which this suit was brought. A test of good consideration is whether the promisee at the instance of the promisor, has done, forborne or undertaken to do anything real, or whether he has suffered any detriment or whether in return for the promise he has done something that he was not bound to do or has promised to do some act or has abstained from doing something.

If any of the elements of such test be established the consideration becomes sufficient to support a promise although its inadequacy may be grossly disproportionate to the promise. The law does not consider such inadequacy and a learned judge has significantly said that "the smallest spark of benefit or accommodation was sufficient to create a valid consideration for a promise." If therefore the proofs in the present case establish any of these elements which constitute a good consideration, appellant's contention that there was none must necessarily fail.

The instrument in question was made May 25, 1901, by the

decedent, M. Waters, and by it he promised " to pay to Mr. Charles W. Hand, or his successor, Treasurer of the Foreign Mission Board of the Presbyterian Church, North, the sum of Ten thousand dollars ($10,000), in payment as follows, viz : two thousand dollars annually on the first day of June, 1901, 1902, 1903, 1904 and 1905, without interest" reserving "the privilege of paying any part or all of the above amounts in advance of the dates specified." It is added in the instrument: " The foregoing is a memorial of my mother, Mrs. Polly Waters, and is to be used in foreign mission work by the Foreign Mission Board of said Presbyterian Church." Upon the back of the instrument was indorsed, " Paid on the within, New York, May 28, 1901, Two thousand dollars ($2,000) The Board of Foreign Missions, of the Presbyterian Church in the U. S. A., Charles W. Hand, Treasurer."

The decedent when he executed this obligation contemplated certain terms in regard to it. Those were that the board would accept it and undertake to expend the money in foreign mission work and thus establish a memorial of his mother. The Reverend Mr. Smith testified that he told Mr. Waters that he would go to New York and take the obligation with him and present it to the board of foreign missions and that if they refused to accept it on the terms that he wished that he would return and bring it back to him. He testifies: " I was to ask the board if they would accept it on these terms. It was to be spent in foreign mission work preferably in China, and I went to New York and consulted with the secretary of the board." He further testifies that he stated to the board that if they would accept the $10,000 it would be paid to them, provided they would accept and expend it in doing mission work in China. That he came back and reported to Mr. Waters that the board had so agreed and that the treasurer would receive this money for this purpose. And again he stated that he came back and reported to him that they would accept it on these conditions and that he was entirely satisfied. That when he went to New York at the request of Mr. Waters, he took with him a draft for $2,000, the first payment provided for, which he gave to Mr. Hand, who received it as treasurer; and he gave him a receipt for the same which he delivered to decedent.

Mrs. Waters testifies that Dr. Smith told her husband that

everything was arranged and that so soon as they could they would put missionaries in the field, using the money for that purpose.

The secretary of the board of foreign missions testified that under the agreement with Mr. Waters two missionaries were appointed and sent to China to the province of Hunan and that because of this obligation of Mr. Waters the board had refrained from attempting to raise funds for the maintenance and prosecution of missionary work in the province in question. That it would have been obliged to raise money for that province if it had not been for its reliance upon this obligation.

It is clear therefore that the obligation was delivered to appellee and duly accepted by it. That by reason of such acceptance it undertook to expend the money in missionary work in China and to establish thus a memorial in honor of the mother of decedent. There was thus clearly on its part an obligation assumed by it to perform the work designated and in pursuance of this agreement to do the work it received the first payment on account of the same. It accordingly undertook and entered upon the performance of an integral part of the work in question. Relying upon this obligation it refrained from collecting money for missionary purposes in the province in China and employed and sent two missionaries there for the purpose of doing the work that it had stipulated to perform by the acceptance of the obligation. It does not, however, appear when these missionaries were sent, whether before or after the death of Mr. Waters, but it would seem that taken in connection with the inference from the terms of the instrument and with the receipt of the part of the money stipulated therein to be paid, the presumption arises that the work was undertaken and the expenditures therefor incurred, prior to the death of Mr. Waters, and not subsequent to it. The acceptance of the instrument, the obligation imposed and assumed to do the work for the purposes contemplated, the receipt of the money and the entering upon the performance of an integral part of the work, the refraining from making collections and the employment of missionaries, establish beyond doubt that there was a sufficient consideration for the obligation in question. It has been held that the acceptance of an obligation such as the in-

strument sued upon alone and without anything further con-stitutes a sufficient consideration therefor. In the case of Helfenstein's Estate, 77 Pa. 328, where the note was delivered after the death of the maker to the seminary in whose favor it was drawn, it was said by Mr. Justice SHARSWOOD: "Or if the note had been accepted by the trustees before the death of the promisor, it would have stood on the footing of the principle applied in Chambers v. Calhoun, 18 Pa. 13; for in such case if the trustees assumed the duty imposed upon them by the terms or condition of the note, it would have been a sufficient consideration to sustain the promise. But when the decedent died, the trustees had not accepted the note, and his death was a countermand in law of the offer, for such it must be considered until accepted. In Phipps v. Jones, 20 Pa. 260, where there was a subscription with others for the benefit of a proposed association to build a church, it was held that it was a mere proposal, revocable until the association was formed and the promise accepted, and the death of the subscriber was such a revocation."

In Maine Central Institute v. Haskell, 73 Me. 140, it is said: "The promise was of money for a specified purpose " to make up a' building fund for said institution." This purpose was ever recognized by the law as a public charity. The promise was made to a definite payee by name, one legally competent to take, incorporated for the express purpose of carrying out the object contemplated in the promise and therefore amenable to law for negligence or abuse of the trust. It is not of course binding upon the promisor until accepted by the promisee and may up to that time be considered as a revocable promise. But when so accepted and much more when the execution of the trust has been entered upon, when money has been expended in carrying out the purpose contemplated, it becomes a completed contract binding upon both parties; the promise to pay and at least the implied promise to execute, each being a consideration for the other."

See Albert Lea College v. Brown, 60 L. R. A. 870; also Garrigus v. Home Frontier and Foreign Missionary Society, 3 Ind. App. 91.*

---

* Also reported 28 N. E. Repr. 1009.—REPORTER.

In Roche v. Roanoke Classical Seminary, 56 Ind. 198, it is said: " It was the absolute and unconditional promise of the maker of the note, not dependent by its terms upon the acts of any other man or body of men, to pay as therein stipulated for the purpose therein expressed. And in our opinion, the only matters which could have been answered in this action, to constitute a failure of consideration of the note in suit, would have been an alleged abandonment by the appellee of the enterprise for which it was incorporated and in aid of which the note was executed."

See Keuka College v. Ray, 167 N. Y. 96; * Athol Music Hall Company v. Cary, 116 Mass. 571.

In case of Amherst Academy v. Cowls, 23 Mass. 427, it is said: " But it is quite sufficient to create a consideration that the other party the payee, should have assumed an obligation in consequence of receiving the note, which he was compellable either at law or in equity to perform, unless the promisor should be able to show when sued, that the payee had refused, or was unable or had unreasonably neglected to perform the engagement on his part; in which cases a defense might be raised on the ground of a failure of the consideration."

See Ladies' Collegiate Institute v. French, 82 Mass. 196.

The general trend of judicial decision may therefore be said to be in the direction of sustaining contracts for subscriptions or donations to churches or charitable or kindred institutions, where the same have been duly accepted, their acceptance constituting a good consideration for the reason that obligations are thereby assumed. Assuredly such contracts should not be stricken down by the enforcement of a close technical rule, made for the possible protection of the individual, but upon broad principles, should be sustained by judicial authority so as to effectuate the purposes intended. In the present case there was not only the obligation to pay directly, but the acceptance of the same by appellee, its receipt of part of the money, its part performance of the obligations assumed, its undertaking to carry them out and the refraining on its part from making collections on account of the instrument. It was not therefore a gift revocable upon the death of the donor, but

---

* Also reported 60 N. E. Repr. 325.—REPORTER.

it was an express obligation to pay, based upon a good consideration.

The very able and learned argument of the appellant, with it varied citation of authorities, failed to shake the position taken by the appellee, because the facts as stated had rendered it impregnable.

The assignments of error are not sustained and the judgment is affirmed.