L. RUTENBECK, Assignee, etc., Appellee, v. W. C. HOHN and others, Appellants.

**Corporations:** ASSESSMENT OF STOCKHOLDERS: EQUITABLE JURISDICTION. A suit by the assignee of a corporation for the benefit of creditors, to ascertain and recover from each and all of the stockholders the proportionate amount of their subscriptions necessary to discharge corporate debts, and in effect involving an entire settlement and closing up of the corporate business, is triable in equity.

**Same:** SUBSCRIPTION AGREEMENT: VALIDITY. A preliminary subscription agreement by which the subscribers agreed to give their notes for the amount opposite their names for a specified purpose, when made with a view to the formation of a corporation which was in fact thereafter organized on the strength of the agreement, is not void for uncertainty as to the payee and because no reference was contained therein to the formation of the corporation.

**Same:** ORAL SUBSCRIPTIONS TO STOCK: ESTOPPEL. An oral subscription to stock may under some circumstances be enforced; as where a subscription agreement with a view to the organization of a corporation, provided that a certain sum should be subscribed before it should become binding, but did not require that subscriptions should be in writing, the oral agreement of part of the subscribers to pay a balance of the total amount was a compliance with the terms of the original agreement, rendering the same enforceable; and where the corporation borrowed money

on the strength of such subscriptions the oral subscribers were estopped to deny their liability.

**Same:** ACCEPTANCE OF SUBSCRIPTIONS. Where the officers of a corporation made use of oral subscriptions to stock as a basis of procuring a loan, the proceeds of which was used in the corporate business, the stockholders were in no position to urge that such subscriptions were invalid for want of acceptance by the corporation, as acceptance if necessary will be implied from the conduct of the parties.

*Appeal from Clinton District Court.*—HON. A. P. BARKER, Judge.

FRIDAY, JUNE 4, 1909.

THE opinion states the material facts.—*Affirmed.*

*F. M. Fort,* for appellants.

*E. L. Miller* and *Wolfe & Wolfe,* for appellee.

WEAVER, J.—In the year 1901 certain persons, living in and near the town of Lost Nation, undertook to organize a company or association for the purpose of establishing and operating a creamery. To that end a paper was prepared in the following form: "We the undersigned hereby agreed to give our notes for the amount set opposite our names for the purpose of building and equipping a creamery in or near Lost Nation, Iowa. This agreement to be null and void unless four thousand dollars are subscribed." Whether this subscription was ever completed in accordance with its terms is the principal question of fact here in controversy. The scheme seems to have been for each individual subscriber to give his individual note for the amount of his subscription, without interest, for a period of five years, the paper thus accumulated to be used as a basis of credit for a corporation, which was to

be formed to carry on the business, in which corporation each subscriber was to be a stockholder to the extent of his subscription. The evident thought or hope of the organizers was that the business would be sufficiently profitable to enable it to pay off any indebtedness incurred at the outset, and release the subscribers from any obligation to pay the notes given by them. The articles of incorporation, following out the plan, provided that the capital stock of $4,500 was to be represented by the notes of the stockholders, payable to the corporation, due five years after date, without interest, and to be held as a basis of credit with authority to the board of directors to hypothecate them as collateral security for any indebtedness lawfully contracted. It was further provided that, upon liquidation of its affairs, the makers of said notes might be assessed proportionally for the payment of the corporate debts after exhausting all other assets; no assessment to exceed the amount of the stockholder's note. By another clause of the articles of incorporation all persons who have executed notes as aforesaid or who have agreed so to do, are made stockholders, and authorized to participate in all stockholders' meetings. After several years' business the corporation made an assignment for the benefit of its creditors, under the insolvent laws of the State. The assignee now brings this action in equity, alleging that after applying all other available assets of the corporation, there remains an unpaid balance of over $2,000 of corporate indebtedness. He further alleges that the defendants are all subscribers to the capital stock of the concern; that he has made an assessment upon them, in accordance with the plan of its organization, for a sum sufficient to meet said indebtedness, but that they have neglected and refused to pay the same, and he therefore asks the court to assess and adjudge the amount due from each of said stockholders, both those who have executed their notes in accordance with said plan, and those who

subscribed to the plan and failed to give their notes, and that he recover from them, and each of them, the amount or share which the court shall find justly due. A motion to transfer the cause to the law calendar for trial having been denied, and a demurrer to the petition having been overruled, the appealing defendants answered, denying the allegations of the petition, and denying that their subscriptions ever became effective because of the failure to obtain a subscription of $4,000. The cause was tried to the court which found for the plaintiff, assessing the defendants severally at the rate of one hundred percent upon the amount of their several subscriptions, and entered judgment accordingly. From this judgment two of the defendants, J. C. Houle and J. W. Clapp, appeal.

I. Error is alleged upon the denial of the defendant's motion for a transfer of the cause to the law calendar. The exception can not be sustained. If the action

1. CORPORATIONS: assessment of stockholders: equitable jurisdiction.

were brought by a single creditor of the corporation to enforce the statutory liability of an individual stockholder, as was the case in *Water Power Company v. Hopkins,* 79 Iowa, 653, and *Bayliss v. Swift,* 40 Iowa, 648, it may well be that an action at law would be sustained. Here, however, the suit is in effect a proceeding to wind up the affairs of the corporation, to which end it is necessary to ascertain what, if any, corporate assets have come into the hands of the assignee, whether the same have been applied to the payment of corporate debts, the amount of such indebtedness remaining unprovided for, and to what extent, if any, an assessment is required upon the unpaid stock subscription to meet such demands. That this is a subject of equitable jurisdiction is too clear to require argument or discussion. 6 Pomeroy's Equity Jurisprudence, section 910. If the liability of the delinquent stockholders were absolute, and each was liable upon the face

of his subscription for the full amount thereof, a different situation would be presented. But the liability in this case is of an equitable or contingent nature. By the express terms of the articles of incorporation the stockholders are to be held for only such ratable proportions of their subscriptions as shall be found necessary for the payment of corporate obligations after exhausting all the corporate assets proper. To procure an adjudication of the amount necessary for that purpose, and of each stockholder's proper contribution thereto, it was proper, if not necessary, to bring them all into court, and settle the entire business in a single suit, instead of bringing separate actions at law against each of the numerous stockholders. Such adjudication is essentially equitable in its nature. *Bell's Appeal,* 115 Pa. 88 (8 Atl. 177, 2 Am. St. Rep. 532). The direct question here presented arose in *Cook v. Carpenter,* 212 Pa. 165 (61 Atl. 799, 1 L. R. A. (N. S.) 900, 108 Am. St. Rep. 854), where the assignee of an insolvent corporation brought an action in equity against a large number of stockholders to collect unpaid stock subscriptions. It was there held that, while separate actions at law could be maintained against the several subscribers, equity still had jurisdiction to bring all into a single suit and settle the rights of all by a single adjudication. That holding is eminently reasonable, and in accord with established principles of equity jurisprudence, and we know of no statute or decision in our own state which forbids its application here. See, also, *Sanger v. Upton,* 91 U. S. 56 (23 L. Ed. 220).

II. It is next said the subscription agreement is void for uncertainty, in that no payee is named, and there is no reference therein to any corporation to be formed. If this paper were all to which we have to look, 2. SAME: subscription agreement: validity. the objection would be well taken, but it is shown without any dispute that it was made and subscribed as a preliminary step to the organization of

a corporation which was in fact thereafter organized upon the strength of this very subscription, making the several subscribers stockholders to the extent 'of the obligation thus assumed. There is no ambiguity or uncertainty in the agreement when considered in the light of the conceded facts.

III. Most of the other points made by the appellants may be grouped under the general proposition that the subscription never became effective because of the alleged failure to secure subscriptions to the full amount of $4,000. This is largely a question of fact, and the material circumstances

3. SAME: oral subscriptions to stock: estoppel.

are involved in radical dispute between the witness. The testimony on the part of plaintiff tends to show that about the time the corporation began business it applied to the First National Bank of Lost Nation for a loan of $2,500. The subscription paper, at that time showed but thirty-six signers for $100 each, and but few, if any, of these had yet given their notes. The bank objected to making the loan, on the ground that the subscription was incomplete, not aggregating $4,000, thus rendering doubtful the liability of the subscribers already obtained. To avoid this objection three of the subscribers, Hohn, Hill, and Busch, orally agreed to take the unsubscribed stock to the amount necessary to make up the required sum, and thereupon the loan was made. The unpaid balance of the debt thus contracted constituted a large proportion of the liabilities, for the payment of which an assessment upon the subscribers is sought in this proceeding. These three persons, Hohn, Hill and Busch, admit their oral undertaking in this respect, and concede their liability thereon as subscribers to that extent to the stock of the corporation. On the other hand, this oral subscription or agreement is denied by the appellants, who claim that whatever agreement may have been entered into on the part of Hohn, Hill and Busch was made long after the corporation had been or-

ganized, and when it was near the point of dissolution by insolvency.    These contending claims are irreconcilable; and, while the truth of the matter is left in some doubt, we are led to agree with the trial court that the preponderance of the evidence is with the plaintiff, and that the oral agreement was made before the corporation commenced business, and at the time the money was borrowed from the bank.    It would serve no useful purpose to review the testimony which brings us to this conclusion further than to say that the plaintiff's version of the transaction appears to us the more reasonable, and the better supported by the course of business pursued by the parties.

But counsel contend that in any event, the subscription or agreement not being in writing, it did not satisfy the condition of the written subscriptions.    The fair and reasonable interpretation to be put upon said condition is that none of the subscribers were to be bound by said agreement until all the valid and enforceable agreements of like character should aggregate $4,000.    It had no reference to the manner in which the subscriptions were to be made, but to their aggregate amount and validity. If, then, the oral agreement of Hohn, Hill and Busch to subscribe or take stock to the amount required to perfect the organization and to validate all the subscriptions was a legal and binding obligation on their part, then the condition was fulfilled, and the contract is enforceable as to such subscriber.    That an oral subscription to stock is a valid contract has been affirmed by this court.    *Hotel Co. v. Lyon,* 69 Iowa, 687.

While the strict definition of the word "subscribe" or "subscription" involves the idea of a written signature, yet by common usage it is often employed to include an agreement, written or oral, to give or pay some amount to a designated purpose, more usually, perhaps, to some purpose for the promotion of which numerous persons are uniting their means and their efforts.    An actual taking

of stock has been held to be equivalent to a subscription. *Barron v. Burrill,* 86 Me. 66 (29 Atl. 939). "Subscribe" has been defined as equivalent to "agree to pay." *Strong v. Eldridge,* 8 Wash. 595 (36 Pac. 697). The *Barron* case was an action in equity to enforce payment on a stock subscription for the benefit of corporate creditors, and it was held that payment for the stock was sufficient evidence of a subscription, though no written agreement or undertaking was shown. See, also, *Jackson v. Traer,* 64 Iowa, 480; *Nulton v. Clayton,* 54 Iowa, 425.

Even if under ordinary circumstances a subscription to stock must be in writing to be of any validity, the circumstances of this case would in our judgment except it from the operation of that rule. It will be remembered that at the time of making the oral agreement, and upon strength thereof, the bank made the loan which constitutes the bulk of the corporate indebtedness, and the corporation incurred the obligation of its repayment, whereby the said Hohn, Hill and Busch became effectually estopped from denying their personal liability to the amount of such subscription. This liability they have consistently recognized, and have paid to the assignee the sum for which they thus became chargeable. The sufficiency of the subscription can not be successfully challenged.

Nor is counsel's thought that the subscription is invalid for want of acceptance by the corporation any more tenable. This subscription was necessary to the validity of the organization. The executive officers of the corporation made use of it as a basis for the procurement of the loan. Upon the assurance of it money was procured, and all the corporate business thereafter transacted. If any acceptance was needed, it may be conclusively implied from the conduct of the parties.

4. SAME: acceptance of subscriptions.

An attempt is made in argument to show that one of the thirty-six names subscribed to the original written

agreement was not in fact a subscription, and that no sum or amount appears to have been promised by such person. Without going into particulars we will say the record does not support the point thus made. Moreover, this matter does not seem to have been made an issue of the pleadings. We are content to follow the finding of the trial court upon this branch of the case.

The several propositions we have considered include all the really debatable propositions raised by the appeal. We have examined the record with reference thereto, and find nothing calling for a reversal of the decree below. It is therefore *affirmed*.