ROUFF et al. v. WASHINGTON & LEE
UNIVERSITY.

No. 9647.

Court of Civil Appeals of Texas.
Galveston.

Jan. 29, 1932.

Rehearing Denied Feb.' 25, 1932.

Wagner & Wagner 'and T. W. Grobe, all of Houston, and Sonfield & Sonfield, of Beaumont, for appellants.

C. A. Teagle of Houston, for appellee.

GRAVES, J.

Appellants' brief makes this statement concerning the cause:

"This is a suit against the Executors and Executrix of the Estate of Henry 'S. Fox, Jr., deceased, seeking to recover on a subscription made by Henry S. Fox, Jr., to appellee university.

"The facts in the case are undisputed.

"Appellee alleged that it engaged in raising a fund by public subscription 'for the purpose of founding and endowing the Robert E. Lee School of Civil & Highway Engineering at the Washington & Lee University at Lexington, Virginia, and as a part of said institution. * * * That it was contemplated by this plaintiff that the sum of five hundred thousand ($500,000.00) dollars would be necessary to the creation and support of said school and the erection of the necessary building.'

"The Secretary and Treasurer of Appellee testified that the original plan for seeking subscriptions for the Robert E. Lee School of Civil & Highway Engineering provided for securing subscriptions of five thousand ($5,-000.00) dollars from each individual, these subscribers to be known as 'founders' of the school.

"On October 8, 1920, on the solicitation of Dr. Henry Louis Smith, President of appellee university, Henry S. Fox, Jr.; executed the following:

" 'The Lee Memorial Fund.

" 'It is my desire and purpose to become one of the hundred Founders of the Robert E. Lee School of Civil & Highway Engineering.

" 'In fulfillment of this purpose and in consideration of the gifts of others, I hereby subscribe to the Lee Memorial Fund Five Thousand Dollars, this sum to be paid to Washington & Lee University as follows: On or before June 1, 1921.

" '[Signature]  Henry S. Fox, Jr.
" '[Mailing Address] Houston Natl. Ex.
Bank,
" 'Houston, Texas.'

"Appellants pleaded limitation (which plea, however, was abandoned); that the subscription contract was an executory agreement to make a gift or donation in the future, was unilateral and without consideration; that the school not having been founded or established at the date of the death of Henry S. Fox, Jr., the subscription was revoked by his death, and cannot be enforced against his estate.

"Appellants further pleaded that the subscription was conditioned upon appellee's procuring one hundred (100) founders of said school, which appellee had not done at the date of the death of Henry S. Fox, Jr., or thereafter, and that the Robert E. Lee School of Civil & Highway Engineering has never been founded or established in appellee university.

"The trial was to the court without a jury, and judgment was rendered in favor of appellee for the amount of the subscription, with interest from the date same was due and payable, to which judgment appellants in open court duly excepted and gave notice of appeal to this Honorable Court.

"On motion of appellants, the court filed conclusions of law and fact, and on further motion of appellants the court filed supplemental and additional findings of fact."

To this the appellee adds the following:

"The subscription set out in the statement shows on its face that it was unconditional, and no evidence was offered that it was based on a condition.

"No pleading was filed raising the issue as to reasonable time in which to carry out the project, no evidence was offered on that issue, and no finding made by the trial court on said issue.

"The uncontradicted testimony shows that more than $11,000.00 was spent by appellee for equipment, machinery, and etc., in the school of highway engineering, and two full-time professors engaged at a salary of $5,-000.00 each, all of which was done after the subscription was obtained and prior to the death of Fox.

"The facts were undisputed that Fox wrote letters as late as January 1st, 1925, ratifying his subscription, and requesting an extension of time for its payment."

On the appeal the parties agree upon the law, as thus stated in appellants' first proposition: "The subscription sued on herein for the founding or establishing of the Robert E. Lee School of Civil & Highway Engineering made by Henry S. Fox, Jr., during his lifetime, was an executory gift, was unilateral and without consideration, and same was subject to revocation at the date of the death of Henry S. Fox, Jr. and can not be enforced against his estate, unless such school was founded, or expenditures were made, or enforceable liabilities incurred, prior to his death, on the faith of the subscription, in the founding or establishing of the said school in appellee university."

They likewise concur in the opinion that the true rule governing such a subscription is announced by the Supreme Court of Texas in Hopkins v. Upshur, 20 Tex. at page 94, 70 Am. Dec. 375, where this is said: "At the time Upshur made and delivered the subscription to Durham, it is true that the Vestry did not and had not bound themselves to build the church. And it is also true that there was no consideration then executed. It may well be admitted that there was at that time no cause of action against Upshur. When and by what acts, then, did it accrue? The answer is, when the Vestry assumed liabilities and incurred expenses in building the church, upon the faith of the subscription."

While appellant assails the recovery on a number of grounds—among them that no such agreed upon "school" had ever either been founded or started, nor had any liabilities or expenses been assumed or incurred in that behalf upon the faith of this subscription, but on the contrary that all funds received from others for that purpose had been diverted therefrom by being used in enlarging the School of Applied Science in appellee university, and that strong probability of ultimate failure at all events of the whole project was at the time of this trial imminent through lack of sufficient funds—the correctness of the judgment seems to this court to depend upon whether or not, under the undisputed facts, (1) the contemplated "Robert E. Lee School of Civil & Highway Engineering" had been started, and funds expended in furtherance of that enterprise, prior to Mr. Fox's death, and (2) whether or not the several successive requests of Mr. Fox (in the way they were made) while yet living, requesting an extension of time within which to pay his subscription, amounted to such a ratification thereof as should estop his estate from claiming a release from it.

Accordingly, such of the facts as are thought to control these inquiries are thus recited:

The subscription was made by Fox, in writing, on October 8, 1920, payable on or before June 1, 1921. Each year thereafter, Fox, by letters, asked for an extension of his subscription solely because of his own inability to pay it, and as late as January 5, 1925, in response to its president's letter of January 1 of that year to him, again likewise wrote to the appellee asking for another extension; these two letters being as follows:

"January 1, 1925.

"Mr. Henry S. Fox, Jr.

"Houston National Exchange Bank,

"Houston, Texas.

"My dear Mr. Fox:

"You probably remember your letter of July 26th, a year ago, stating that it had been inconvenient, on account of bad financial conditions in your section, to pay your subscription of $5,000.00 to the Washington and Lee endowment fund, and asking us to extend the subscription to June 1, 1924.

"Now that the year 1924 has gone and financial conditions seem to have improved

considerably, I am writing to express the hope that you can send us a check either for the whole of this subscription or for some part of it.

"Not only is the University in special need of these subscriptions, but continued delay in their payment is putting us in a rather serious financial situation, increased by the fact that their nonpayment prevents our receiving the generous donations of the General Education Board.

"I am enclosing a small bulletin for your wall, remembering your deep interest in General Lee and his veterans, and am looking forward with pleasure to your answer since I remember with much distinctness your warm-hearted interest and prompt response several years ago.

"With kindest regards and many good wishes, I am

"Sincerely yours,
"Henry Louis Smith, President."

"Houston, Texas, Jan. 5, 1925.
"Mr. Henry Louis Smith, Pres.,
"Washington & Lee University,
"Lexington, Virginia.
"My dear Doctor Smith:

"I am in receipt of your letter of the 1st inst., with reference to my subscription of $5,000.00 to the Washington and Lee Endowment fund. It pains me exceedingly to have to advise that as yet financial conditions with me are such as to preclude my taking care of this obligation at this time.

"When I wrote you a year ago, this section of the country had sustained severe losses among cattle due to recurrent freezing weather, and I was among the heaviest losers, and this year when things looked a little brighter we again encountered bitter weather which took even a greater toll than formerly, as you may have noticed from the news dispatches.

"I fully realize the embarrassment resulting to the University by failure to receive such subscriptions as mine, and will say that I will do my utmost to take care of my obligation at the earliest possible moment.

"With kindest regards and best wishes, believe me to be,

"Sincerely yours,    Henry S. Fox, Jr."

During those years in which his subscription was extended, the appellee was expending the income from the fund it had collected for the purpose, as its officers testified, for which it was collected, and, among other things, had purchased $11,000 worth of new equipment to carry out the purpose of the subscription.

Appellee's secretary-treasurer testified:

"At a meeting of the Board of Trustees of this institution, held on January 17, 1920, the Board approved the establishment and endowment of the Robert E. Lee School of Civil and Highway Engineering. Prior to that time the course in Civil Engineering was given in the School of Applied Science. A very sketchy course in Highway Engineering was given, and comparatively little work was offered in Electrical Engineering. The plan approved by the trustees was to develop from these engineering courses given in the School of Applied Science a School of Engineering in which would be included thorough courses in Highway and Electrical Engineering as well as in Civil Engineering, and the President was authorized to solicit subscriptions for the purpose of founding and carrying on the work of this school.

"Our President, Dr. Henry Louis Smith, began work on this project very soon after he was authorized so to do by the Board of Trustees. In the year 1921, after the subscription of Mr. Fox had been made and after several other subscriptions had been taken and collected, a full-time associate professor was put on in the department of engineering in addition to the full professor who before that had done all the work in that department. A thorough course in Highway Engineering was started and has ever since been kept in operation. A department in Electrical Engineering has been organized and a full-time professor put in charge of it and an assistant has been employed in Civil Engineering. Also, something over $11,000.00 has been spent in additional equipment for these courses since Mr. Fox's subscription.

"Good progress has been made towards the creation of said school since Mr. Fox's subscription was taken. The course in Highway Engineering has been enlarged and improved. A complete course in Electrical Engineering has been established. Two additional professors and an assistant have been employed. The annual amount spent on the teaching force of the engineering courses is now more than double what it was prior to Mr. Fox's subscription.

"The amount of subscriptions for said school of Civil and Highway Engineering received by said institution on voluntary subscriptions for that purpose up to this date is $48,146.00, against which the General Education Board is obligated to pay $24,073.00 if same is collected within the time covered by its agreement. The sum of $28,146.00 has been paid on the above subscriptions. Eleven of the subscribers have paid in full.

"In founding what is termed a 'school' in a university or college, the principal things to provide are ,(1) a building (2) equipment, and (3) a fund which is usually called 'Endowment,' from which the teachers in said school can be paid. In this case we already have a building sufficient for the present needs of the school. The founding of a school does not necessarily imply the erection of a building. In this case it would be

486

a waste of money to put up a building until it is needed. We did lack equipment for this school, and have spent something over $11,000.00 in buying modern equipment. The fund paid in has been treated as Endowment and the interest from it used in helping to pay the teachers in the Engineering Department. The plan for this project contemplates the erection of a building when the fund is completed, as the engineering school can then be enlarged beyond the capacity of the building now used. * * *

"The organization of said school has been begun and is well under way, but has not been completed. A complete course in Highway Engineering has been put in and also a course in Electrical Engineering. Two additional full-time professors have been employed in the Engineering Department, and one assistant, and new equipment costing over $11,000.00 has been purchased. In enlarging the Engineering Department to the extent just mentioned, all of which has been done since Mr. Fox's subscription was secured in 1920, a large amount of money has been expended by Washington and Lee University, and this expense was incurred by the University relying on the subscriptions of Henry S. Fox, Jr., and others to this fund as having been made in good faith and with full expectation of collecting them. * * *

"The proceeds of the subscription promised by Henry S. Fox, Jr., were intended, and still are intended if the same can be collected, to be used to found and maintain a School of Civil and Highway Engineering. The proceeds of pledges similar to Mr. Fox's which have been collected have been used solely for this purpose.

"The intention of the trustees of this institution was, as I understood it, to enlarge the department of civil engineering which has existed here since 1866, to add to it a thorough course in highway engineering, to get modern equipment for it, and to dignify it by the name of Robert E. Lee School of Civil and Highway Engineering, and, as soon as the growth of the school justified it, to erect a building especially to house it. In other words, the purpose was to make an elaborate school out of which was heretofore a minor department of the University.

"The original plan for seeking subscriptions for the Robert E. Lee School of Civil and Highway Engineering provided for securing subscriptions of $5000.00 from each individual. These persons were to be called 'Founders.' The following persons made such subscriptions: George W. St. Clair $5,000.00; William Ingles $5,000.00; Henry S. Fox, Jr., $5,000.00; W. D. Lewis $5,000.00; R. H. Downman $5,000.00; J. Q. Dickinson $5,000.00; E. M. Kirkpatrick $5,000.00; Lon V. Stephens $10,000.00.

"This institution has not erected a building for the Robert E. Lee School of Civil and Highway Engineering. There are not as many as one hundred founders of the Robert E. Lee School of Civil and Highway Engineering at this time. We are still seeking them and hope that they will eventually be secured.

"As to whether the Washington and Lee University has a school known by the name of the Robert E. Lee School of Civil and Highway Engineering, our Board of Trustees in January, 1920, formally approved the establishment of the Robert E. Lee School of Civil and Highway Engineering, which is also to include electric engineering. Our engineering work is now carried on as a department in the School of Applied Science. The founding of the Robert E. Lee School of Civil and Highway Engineering has been begun, is well under way, and we expect to complete it. No time limit was fixed by our trustees for completing this work. * * *

"During a part of that time (since 1866) the course in civil engineering included the teaching of some highway engineering in a rather sketchy way. Since obtaining Mr. Fox's subscription and the subscriptions of others toward establishing the Robert E. Lee School of Civil and Highway Engineering, a thorough course in highway engineering has been put in operation here with modern equipment for testing, field work and drafting."

Its president, among other details, added:

"Although the School as above planned is not yet completely endowed nor housed in a building of its own, its three departments are actively carried on with an enlarged and growing faculty of teachers. These departments of engineering now occupy Reid Hall and the first floor of the Chemical Laboratory. The single building contemplated by the University has not yet been erected.

"Henry S. Fox, Jr., so far as I know, has not yet paid any part of his subscription. Prior to Mr. Fox's subscription on October 8, 1920, there was but one teacher of all the engineering taught at Washington and Lee. Following this period the University added a second teacher in Civil Engineering, established a professorship and department of highway engineering, and established a professorship and department of electrical engineering, the faculty of the three consisting of Profs. Lyle, Houston and Dickey, whose salaries now amount to $10,200.00 per annum.

"The President and Trustees of Washington and Lee enlarged the above departments relying on the subscriptions made by Henry S. Fox, Jr., and others to the Lee School of Engineering, and the deficit incurred each year in this department is increased by the non-payment of Mr. Fox's subscription due several years ago."

It also appeared that no mention had been

made in any of the University's catalogues of the "Robert E. Lee School of Civil & Highway Engineering"; that no additional subscriptions over those already mentioned were had between December 3 of 1926 and November 20 of 1929; that Mr. Fox died on May 1 of 1925, without ever having paid any part of his subscription; and that what the appellee did with the other subscriptions and contemplated doing with his is further detailed in these supplementary fact-findings of the trial court:

"Seventh: The fund paid in from these subscriptions has been treated by the Trustees of the University as endowment, and the interest or income therefrom has been used in enlarging the department of engineering, in employing and paying additional professors and teachers and the purchase of additional equipment for the department of engineering, a department of the School of Applied Science.

"Eighth: Civil and highway engineering, which before the subscription of Henry S. Fox, Jr., were departments of the School of Applied Science, continued as such after the subscription and to the date of the trial, but the work in these departments was enlarged, as above stated, in the use of the funds derived from the subscriptions.

"Ninth: After the subscription of Henry S. Fox, Jr., expenditures were made on the faith of his subscription enlarging these departments (civil and highway engineering) with a view to ultimately taking these departments out of the School of Applied Science and establishing the Robert E. Lee School of Civil & Highway Engineering."

■■ When there is applied to these undisputed facts the well-established principles of law appertaining to such subscriptions as this one, both the questions stated supra should be answered in the affirmative, we conclude; thus tested, not only did the originally unilateral and nudum pactum character of Mr. Fox's obligation disappear while he yet lived on the University's assuming the liabilities and incurring the expenses it uncontrovertedly so did in furtherance of the founding of the "school," but his own continuous defaults in payment throughout the same period, with accompanying requests for extensions of time, solely on account of his individual financial situation—thereby materially contributing to the appellee's delay—estopped him, as well as his estate after him, from claiming a revocation. The rules of law respectively evolved from these two states of fact are well exemplified as to the first, by such authorities as Hopkins v. Upshur, 20 Tex. 89, 70 Am. Dec. 375; Furman University v. Waller, 124 S. C. 68, 117 S. E. 356, 33 A. L. R. 615; Eastern States League v. Vail, 97 Vt. 495, 124 A. 568, 572, 38 A. L. R. 845; Waters v. Union Trust Co., 129 Mich. 640, 89 N. W. 687; as to the second, by those like Williams v. Rogan, 59 Tex. 438.

In the Vail Case the Supreme Court of Vermont puts the one this way:

"If the subscription is unenforceable as being without consideration originally, but before its withdrawal the promisee performs acts, expends money, or incurs enforceable liabilities on the faith of the subscription, in furtherance of the enterprise intended to be promoted, the right of revocation is lost and the subscription is thereby rendered valid, binding, and enforceable, subject, of course, to such conditions as the contract imposes. * * *

■ "It fairly appears that the plaintiff accepted the subscriptions, conducted a campaign to secure the required amount at Mr. Vail's implied request, and with his knowledge and approval incurred expense and obligations in furtherance of the plan of which he was the principal promoter, relying upon the subscriptions to finance the undertaking. In such circumstances, tested by well-established principles, Mr. Vail's subscription, became in his lifetime a valid and irrevocable obligation, even if the condition under which the subscription was to become due and payable had not then been met. * * * The rule that the death of a subscriber to a benevolent or charitable purpose works a revocation of the subscription applies only to cases where the decedent himself might have revoked the promise at the time of his death."

While in the last-cited opinion, our own Supreme Court thus couches the other:

"It is further claimed that the appellant was released by the failure to build the house promptly. The agreement was that the 'school should be put in operation as soon as possible after the collection of the necessary funds for said purpose.' * * * The very object, as evidenced by the subscriptive agreement, was to raise the sum requisite to do the work; and as that was made payable in installments, it is probable that none of the parties contemplated that the work should be commenced at once. Such was not the agreement of the parties; and the appellant could not well be heard to say that, by his own failure, at least in part, to pay the installments on his subscription as he had agreed to do, he could place the other party in default, in not doing what they had agreed to do so soon as it could be done after he and others had complied with their agreements.

"The payments were not conditioned upon the completion of the work in a given time, but it must have been understood by all parties, that the work was to be done when the subscriptions were paid."

■■ Appellants' merely alleging this subscription to be a materially conditional one did not make it so, since, in the first place,

its text plainly discloses that, aside from Mr. Fox's expression of his "desire and purpose to become one of the hundred Founders," he unreservedly committed the whole enterprise to the discretion of the University, inclusive of the time when and the manner and method by which the "School" was to be established, and in the second, both he and its executives so mutually construed and acted under it for the entire five years intervening between its date and his death, as the correspondence between them makes manifest. He accordingly thereby recurrently ratified and confirmed his engagement to pay, hence must be held to have waived delay, or lapse of time. Wherefore, under the findings that the facts giving rise to the two considerations the quoted holdings rest on existed here, revocation of this subscription was interdicted and liability thereon ensued upon them both. Great courts and texts have declared this to be the rule of construction for subscriptions like the one at bar:

■ "Such agreements for public, or quasi public enterprises, are favored in law, and as a matter of public policy are construed, if they reasonably may be, to support a recovery. Doubtful questions are to be resolved against subscribers who seek to evade promised contributions. Merchants' Bldg. Improv. Co. v. Chicago Exch. Bldg. Co., 210 Ill. 26, 102 Am. St. Rep. 145, 71 N. E. 22; Methodist Episcopal Church v. Garvey, 53 Ill. 401, 5 Am. Rep. 51; 25 R. C. L. 1398; note in 48 L. R. A. (N. S.) 784; Brokaw v. McElroy, 162 Iowa, 288, 50 L. R. A. (N. S.) 835, 143 N. W. 1087; Presbyterian Bd. of Foreign Missions v. Smith, 209 Pa. 361, 58 A. 689; and Ex parte South, 205 Ala. 31, 88 So. 221, are to the same effect; and so are our own cases." See 38 A. L. R. page 850.

This principle would seem to be especially operative as a deterrent against the successor in interest of one who, so long as life lasted, had himself not only never sought an evasion, but, in apparently unwavering purpose to pay, notwithstanding much of the now relied upon delay and unfavorable outlook for the plan, had consistently for five years reaffirmed his engagement.

Furthermore, there is no extrinsic evidence whatever of any such condition as is claimed.

■ The same resulting situation obtains as to whether or not a reasonable time had elapsed before the filing of this suit, within which all the contemplated subscriptions should have been obtained and their objective carried out; appellants offered neither pleading nor proof raising such an issue— which is one of fact, 37 Cyc. 498, and cited authorities—nor was any express finding made upon it; therefore, it is not here involved. However, the trial court found generally in favor of the appellee, which would presumptively include a like determination of that feature, if it could be considered material.

Neither (for the reasons already given) is it thought the uncompleted condition of the undertaking at the time of this trial was either available as a defense to appellants, or made out as such, if it could be so regarded; as was held concerning the Vail subscription, supra, Mr. Fox's also "became in his life-time a valid and irrevocable obligation, even if the condition under which the subscription was to become due and payable had not then been met."

Moreover, the court found on uncontroverted evidence that the trustees of the University were then still in good faith making every effort to carry out their original resolution touching the founding of the "School," as in fact they had all along been, that they had accumulated a permanent fund of $72,000 and had enlarged the particular school— made the beginning of the larger one to be later renamed for General Lee—by adding to it more equipment and two regular professors at increased expense of over $10,000 per year.

■ Under all the given circumstances attending it, there being especially no time limit attached, such a subscription did not fail because the objective for it had not been fully attained. Furman University v. Waller, 124 S. C. 68, 117 S. E. 356, 33 A. L. R. 615; Eastern States, etc., League v. Vail, 97 Vt. 495, 124 A. 568, 38 A. L. R. 845; University of Pennsylvania v. Coxe, 277 Pa. 512, 121 A. 314; Twenty-Third St. Baptist Church v. Cornell, 117 N. Y. 601, 23 N. E. 177, 6 L. R. A. 807.

Further discussion is deemed unnecessary, as these conclusions determine the merits of the appeal.

The appreciation of this court is expressed to the able counsel for both sides, who have so helpfully briefed and argued the cause here.

The trial court's judgment has been affirmed.

Affirmed.