Chas. E. THOMPSON, Independent Executor, Appellant,

v.

McALLEN FEDERATED WOMAN'S BUILDING CORPORATION, Appellee.

No. 12737.

Court of Civil Appeals of Texas.

San Antonio.

Sept. 22, 1954.

Rehearing Denied Oct. 27, 1954.

Chas. E. Thompson, F. E. Butler, McAllen, for appellant.

Ewers, Cox & Toothaker, Donald W. Howser, McAllen, for appellee.

NORVELL, Justice.

McAllen Federated Woman's Building Corporation, as plaintiff, brought suit against Chas. E. Thompson, as independent executor of the estate of Anna M. Kelsey, deceased. Plaintiff alleged that "on or about the 10th day of March, 1952, there was donated to Plaintiff by Anna M. Kelsey the sum of One Thousand Dollars ($1,000.00), for the purpose of assisting in the cost of certain additions and improvements then contemplated by Plaintiff to be made on its Woman's Building at McAllen, Texas; that the said Anna M. Kelsey advised Plaintiff that she had recently sold some property in Starr County, Texas, and that she was gladly giving it One Thousand Dollars ($1,000.00) toward this building project, and that when Plaintiff needed the money in such construction it was to call upon her and she would issue a check therefor."

It was further stated in the petition that the improvements upon the building were completed during the latter part of September, but that thereafter, until her death, "the said Anna M. Kelsey was unable to be contacted by Plaintiff or issue her check in payment of such pledge * * *."

The executor was of the opinion that the claim could not legally be paid because of the provisions of Article 3998, Vernon's Ann.Tex.Stats., and accordingly rejected the same. Suit was thereupon filed and judgment for $1,000 rendered against the executor.

There is no dispute or contradiction in the evidence. Mrs. F. L. Rawls, a member of the Federated Woman's Club of McAllen, testified that Miss Kelsey had theretofore contributed about $6,700 to the Club, and

her account of the March conversation with Miss Kelsey was in substantial accord with the allegations of the petition. It appears that another lady accompanied Mrs. Rawls when she called upon Miss Kelsey. This witness testified that Mrs. Rawls' account of the transaction was substantially correct.

The president of the Club testified that the minutes of the organization disclosed that on April 29, 1952, Mrs. Rawls announced plans to construct a porch across the south end of the building at the approximate cost of $2,500, and reported that Miss Kelsey had pledged $1,000 toward the cost of the same. The president further testified that except for Miss Kelsey's promise or pledge, the improvements to the building would not have been undertaken.

■ Upon the trial objection was made to the receiving of much of the testimony above outlined, on the basis of Article 3716, Vernon's Ann.Tex.Stats., commonly referred to as the dead man's statute. No express ruling on the point was made by the trial court, but the objection was carried along with the case. The matter becomes material, however, in considering the sufficiency of the evidence. In our opinion the testimony was properly received. Although the witnesses may have been officers or agents of the appellee corporation, it has been settled that the statute has no application to such persons. Colonial & United States Mortgage Co. v. Thedford, 21 Tex. Civ.App. 254, 51 S.W. 263; San Antonio Light Publishing Co. v. Moore, 46 Tex.Civ. App. 259, 101 S.W. 867; Williams v. Farmers' Nat. Bank, Tex.Civ.App., 201 S.W. 1083; Chastain v. Texas Christian Missionary Society, Tex.Civ.App., 78 S.W.2d 728; Maurice Cheek, Transactions with Decedents, 5 Texas Law Review, 149, l. c. 156.

■ The executor, as appellant in this Court, contends that the evidence indicates no more than an uncompleted gift. If this view of the case be correct, it can hardly be gainsaid that the judgment should be reversed. Article 3998 provides that, "No gift of any goods or chattels shall be valid unless by deed or will, duly acknowledged or proven up and recorded, or unless actual possession shall have come to, and remained with, the donee or some one claiming under him." See also, Wells v. Sansing, 151 Tex. 36, 245 S.W.2d 964; Harmon v. Schmitz, Tex.Com.App., 39 S.W.2d 587. The delivery of a check is not a completed gift, Bridewell v. Clay, Tex.Civ.App., 185 S.W. 2d 170, wr. ref., hence it follows that a promise to deliver a check in the future stands in the same category.

The appellee, however, relies upon the theory of a subscription rather than a gift. It is said in the brief that, "During her lifetime, Miss Kelsey was solicited for funds for the construction of an addition to the McAllen Federated Woman's Building Corporation and promised to pay $1,000.00 on the costs of the construction, delivery of such amount to be made when it was needed. Relying upon Miss Kelsey's promise, Plaintiff constructed the proposed addition to the club building, but, due to Miss Kelsey's illness and subsequent death, she could not be contacted for payment."

■ Appellant in reply contends that the case below was pleaded and tried upon a theory of donation rather than one of subscription. In our opinion the petition contains allegations which would support a recovery upon the theory that a subscription was involved, and we therefore dispose of this appeal upon that basis.

■ It is not necessary for a subscription agreement to be in writing in order to be enforcible. Lewis v. Durham, 205 Ky. 403, 265 S.W. 934; 83 C.J.S., Subscriptions, § 2, p. 732; 50 Am.Jur. 779, Subscriptions, § 4. The fact that at the time the promise to contribute was made by Miss Kelsey there was no valid consideration then in existence does not necessarily defeat a recovery thereon. In Hopkins v. Upshur, 1857, 20 Tex. 89, Mr. Justice Roberts, speaking for the Supreme Court, said:

"At the time Upshur made and delivered the subscription to Durham, it is true that the vestry did not and had not bound themselves to build the church. And it is also true that there was no

consideration then executed. It may well be admitted that there was at that time no cause of action against Upshur. When and by what acts, then, did it accrue? The answer is, when the vestry assumed liabilities and incurred expenses in building the church, upon the faith of the subscription. In [Trustees of] Amherst Academy v. Coles [Cowls], 6 Pick. [Mass. 427], 433, Parker, chief justice, rules, that if by means of a solemn promise to pay, the body, to whom the promisor has pledged his word, should encounter expense, or assume legal liabilities, this was a sufficient consideration to support such a promise.

"It is not necessary that a consideration should exist at the time of subscription, which is in the nature of a proposition, and the performance of the work is the acceptance of the proposition, and also the consideration, which supports it, as a valid binding proposal. Barnes v. Perine, 2 [9] Barb. [N.Y.] 202."

■ The rule of Hopkins v. Upshur has not been departed from in this State. In Rouff v. Washington & Lee University, Tex.Civ.App., 48 S.W.2d 483, it was cited as a controlling Texas authority upon the point, and a writ of error was refused by the Supreme Court. In his Texas notes to the American Law Institute's Restatement of the Law of Contracts, Dean Ira P. Hildebrand cites Hopkins v. Upshur and Rouff v. Washington & Lee University, as supporting Section 90 of the Restatement of Contracts, which reads as follows:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

While some inconsistencies in court advanced theories supporting recoveries upon charitable subscriptions have been noted by leading text book writers, it seems that judgments have been repeatedly rendered upon such agreements under facts similar to those disclosed by the report of Hopkins v. Upshur. Both Williston and Corbin contain instructive discussions relating to these subscription agreements. Williston on Contracts, § 116, Corbin on Contracts, §§ 198 et seq. See also, 83 C.J.S., Subscriptions, § 5, b(2), p. 736; and 50 Am.Jur. 784, Subscriptions, § 11.

■ There is, however, one phase of the case upon which the evidence is not satisfactory and is insufficient. The pertinent rule is well stated in American Jurisprudence, as follows:

"The death of the subscriber before the acceptance of the subscription terminates the offer, and the estate of the subscriber will not be liable on the subscription. An attempt to effectuate the subscription by an acceptance after the death of the subscriber is ineffective, and his personal representative cannot regard the subscription as open to acceptance, and bind the estate.

"The rule that the death of a subscriber works a revocation of the subscription applies only in cases where the decedent might himself have revoked the promise at the time of his death. Thus, the estate of a subscriber remains liable for a subscription which has been accepted, and which is supported by a sufficient consideration." 50 Am.Jur. 181, Subscriptions, § 7.

■ In order to prove a binding acceptance of Miss Kelsey's offer to contribute, it is necessary to show that appellee took action with reference to such offer which constituted a substantial change of its position. Corbin on Contracts, § 200. This element seems to have been assumed rather than proved. While it was pleaded that the improvements were constructed during the latter part of September, 1952, and it was inferentially alleged that Miss Kelsey died thereafter, the statement of the evidence does not reflect this fact, if such it be. Before the estate can be held liable

it must be shown that the appellee, while Miss Kelsey was alive and possessed the mental ability to revoke her promise had she desired to do so, entered upon the work of constructing improvements and substantially changed its position in reliance upon such promise or pledge. Rouff v. Washington & Lee University, Tex.Civ.App., 48 S.W.2d 483, wr. ref. We accordingly conclude that the judgment should be reversed and the cause remanded for another trial. It is accordingly so ordered.

Reversed and remanded.

### On Motion for Rehearing.

■ Appellant has filed a short but vigorous motion for rehearing which, in view of the importance of the question raised, requires further discussion. The motion particularly attacks our holding that, "It is not necessary for a subscription agreement to be in writing in order to be enforcible." It is asserted that we have held directly contrary to the decision of the Austin Court of Civil Appeals in Wasson v. Clarendon College & University Training School, 131 S.W. 852, wherein it appears that suit was filed upon a written agreement to pay $200 to the financial agent of Clarendon College. This obligation would become due and payable under the contract "when fifty thousand dollars is subscribed in Donley County, limited to one year from date." It appeared that a women's organization, known as the College Circle, had verbally pledged $1,000 to the college fund. The Court held that the word, "subscribed," as used by the parties to the written contract should be literally construed as meaning a commitment actually signed by the party making the same. Under this definition, the Court held that the $1,000 which the College Circle had orally agreed to contribute could not be considered as "subscribed" within the contractual meaning, so as to constitute a part of the $50,000, mentioned in the agreement. There is language in the opinion which may be construed as indicating that the college could not recover against the College Circle because its promise to contribute was not in writing. As the case

was not one between the college and the circle, such language is strictly obiter dicta.

The word "subscription" has at least another meaning in addition to that adopted in Wasson v. Clarendon College & University Training School. In Rutenbeck v. Hohn, 143 Iowa 13, 121 N.W. 698, 700, it was said that:

"While the strict definition of the word 'subscribe' or 'subscription' involves the idea of a written signature, yet by common usage it is often employed to include an agreement, written or oral, to give or pay some amount to a designated purpose, more usually, perhaps, to some purpose for the promotion of which numerous persons are uniting their means and their efforts. An actual taking of stock has been held to be equivalent to a subscription. Barron v. Burrill, 86 Me. 66, 29 A. 939. 'Subscribe' has been defined as equivalent to 'agree to pay.'"

There is probably a conflict in the holdings of the two cases mentioned. Dissimilar definitions of the word "subscribed," were followed and this circumstance has been pointed out, or at least alluded to by the text writers. 39 Tex.Jur. 817, 60 C.J. 953, note 15; 83 C.J.S., Subscriptions, § 2. But the fact that the word "subscribed" may have different meanings and courts have adopted various definitions thereof in construing contracts wherein the word is used, should not confuse the issue here.

■ The substantive rule of law applicable to this case is that when one makes a promise to contribute money for a specified objective and such promise is relied upon and the purpose of the pledge is carried out, the party making the promise may be held liable thereon. The theory supporting the recovery is one of contract and not of gift. It was incumbent upon appellee to make out a cause of action in contract, recognized as legally enforcible, but it did not have the burden of proving a written signature of the person sought to be held, simply because under one dictionary definition of the term "subscrip-

tion," the element of a written signature is involved.

Because of compelling reasons of public policy recognized by the Legislature, there are certain contracts which may not be established by parol. See Statute of Frauds, Articles 3995 and 3995a, Vernon's Ann.Tex.Stats. Likewise, because of public policy considerations, the Legislature has provided that claims against specified parties may not be established by the parol testimony of designated classes of persons. See the dead man's statute, Article 3716, Vernon's Ann.Tex.Stats.

In the present case, Mrs. Rawls was not rendered an incompetent witness by virtue of a statutory enactment. Neither is there a statute which provides that the agreement to which she testified could only be proved by an instrument in writing. To so hold would be to write another provision into the statute of frauds by judicial fiat.

■ There seems to be no common law requirement that an agreement or promise such as the one here involved be in writing. Bullock v. Falmouth & Chipman Hall Turnpike Road Co., 85 Ky. 184, 3 S.W. 129; Colfax Hotel Co. v. Lyon, 69 Iowa 683, 29 N.W. 780; Mills v. Friedman, 111 Misc. 253, 181 N.Y.S. 285, and authorities therein cited.

■ We are not unmindful of appellant's argument that the recognition of oral agreements such as that here involved might lead to frauds or attempted frauds. However, as we see it, the adoption of an exclusionary rule of evidence, based purely upon public policy considerations, such as that suggested here, is a matter properly within the sphere of the legislative branch of government.

■ Appellant's motion for rehearing is overruled. We also overrule appellant's motion to certify questions to the Supreme Court. If our holdings in this case be contrary to those of the Austin Court in Wasson v. Clarendon College & University Training School, Tex.Civ.App., 131 S.W. 852, as asserted by appellant, the Supreme

Court has jurisdiction of the case by writ of error. Articles 1728 and 1821, Vernon's Ann.Tex.Stats., as amended, Acts 1953, 53d Leg. p. 1026. See also, Rule 475, Texas Rules of Civil Procedure, which remains in effect until January 1, 1955.

Motion overruled.